EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Kenneth Vargas Crespo<br>María L. Crespo González<br><br>    Demandantes-Peticionarios<br><br>              v.<br><br>María del C. Soler de la Rosa<br><br>    Demadada-Recurrida | Certiorari<br><br>2003 TSPR 182<br><br>160 DPR ____ |

Número del Caso: CC-2003-207


Fecha: 30 de diciembre de 2003


Tribunal de Circuito de Apelaciones:
              Circuito Regional IV


Juez Ponente:
              Hon. Yvonne Feliciano Acevedo

Abogado de la Parte Peticionaria:
              Lcdo. Ramón Edwin Colón Pratts

Oficina del Procurador General:
              Lcda. Lizette Mejías Avilés
              Procuradora General Auxiliar

Abogada de la Parte Recurrida:
              Lcda. Olga Longoria Vélez

Abogado del Departamento de la Familia:
              Lcdo. Carlos R. Ferreris Hernández


Materia: Adopción


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Kenneth Vargas Crespo
María L. Crespo González

Demandantes-Peticionarios

    v.                               CC-2003-207  Certiorari

María del C. Soler de la Rosa

Demandada Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton.

San Juan, Puerto Rico, a 30 de diciembre de 2003.

El recurso de autos nos permite determinar si los tribunales tienen facultad para requerir la participación del Departamento de la Familia en procedimientos de adopción que surgen luego de que dicha agencia interviene con el menor adoptando por alegado maltrato por su madre biológica. Por entender que, a manera de excepción, en estos casos la presencia del Departamento de la Familia es necesaria para la privación de la patria potestad a los padres biológicos del menor dentro del procedimiento de adopción, contestamos en la afirmativa.

I

A principios del 2001, el Departamento de la Familia presentó ante el Tribunal de Primera Instancia una solicitud de remoción de custodia de emergencia bajo el Art. 35 de la Ley para el Amparo a Menores en el Siglo XXI[1] contra la Sra. María del Carmen Soler de la Rosa (en adelante, señora Soler de la Rosa). En la misma, el Departamento de la Familia solicitó que se le concediera la custodia provisional de la menor A.M.V.S., hija de la señora Soler de la Rosa.

En la vista señalada para dirimir la necesidad de la remoción de custodia de emergencia, celebrada el mismo día en que se presentó dicha solicitud, la señora Soler de la Rosa optó por entregar voluntariamente la custodia de la menor al matrimonio compuesto por Kenneth Vargas Crespo y María Luisa Crespo González (en adelante, familia Vargas Crespo), quienes tienen licencia de hogar sustituto. En vista de ello, el foro de instancia declaró sin lugar la referida petición; asignó la custodia provisional de la menor de tres años y once meses a la familia Vargas Crespo; y le asignó al Departamento de la Familia la responsabilidad de supervisar las relaciones materno

---

[1] Ley Núm. 342 de 16 de diciembre de 1999, según enmendada, 8 L.P.R.A. sec. 443 (en adelante "Ley para el Amparo a Menores"). Como se explica más adelante, esta ley fue derogada por la Ley para el Bienestar y la Protección Integral para la Niñez, Ley Núm. 177 de 1ero de agosto de 2003. El equivalente del Art. 35 de la Ley para el Amparo a Menores en la nueva Ley para el Bienestar y la Protección Integral para la Niñez es el Art. 37.

filiales. En su resolución, el tribunal de instancia mencionó que estaba pendiente una solicitud bajo la Ley de Adopción[2] por parte de la familia Vargas Crespo para adoptar a la menor.

La referida solicitud de adopción, pendiente ante el Tribunal de Primera Instancia desde noviembre de 2000, había sido presentada por los padres biológicos de la menor, el Sr. Ángel M. Vega González y la señora Soler de la Rosa. En esta petición, los padres biológicos de la menor manifestaron su disposición de transferir la custodia y patria potestad sobre la menor a la familia Vargas Crespo con el propósito de que éstos pudiesen adoptarla.[3] Posteriormente, conforme a la Ley de Adopción, *supra*, el matrimonio Vargas Crespo presentó una petición enmendada para solicitar que se declarara con lugar la adopción de la menor A.M.V.S. cuya custodia ostentaban desde que les fue concedida provisionalmente por el tribunal. Como consentimiento escrito de los padres biológicos, se anejó la petición original de adopción presentada por éstos.

No obstante lo anterior, la señora Soler de la Rosa presentó un escrito sobre oposición a adopción, en el que alegó que se encontraba capacitada para cumplir con sus

---

[2] Ley 9 del 19 de enero de 1995, 32 L.P.R.A. sec. 2699 *et seq.*

[3] En dicha petición, los padres biológicos hicieron constar que desde el nacimiento de la menor la familia Vargas Crespo se había relacionado con ésta. Entre otras cosas, en ocasiones la llevaban a la escuela, supervisaban sus tareas escolares y la cuidaban en su hogar durante algunos fines de semana.

responsabilidades como madre y para ejercer adecuadamente la patria potestad que ostenta sobre la menor. En este escrito además, retiró el consentimiento originalmente prestado para la adopción. Por su parte, la familia Vargas Crespo presentó una segunda petición de adopción enmendada en la que solicitó que la señora Soler de la Rosa fuese privada de la patria potestad sobre la menor. En particular, alegaron que la madre biológica había puesto en riesgo la salud física, mental y emocional de la menor y que fue negligente en la supervisión de su educación y desarrollo y en proveerle adecuada alimentación, albergue, vestido y cuidados de salud. La señora Soler de la Rosa, en cambio, se opuso a esta solicitud y negó que existiera ninguna de las circunstancias establecidas en los Arts. 166A, 166B y 166C del Código Civil, 31 L.P.R.A. sec. 634A, 634B y 634C, referentes a las causas por las cuales se puede privar a un padre o madre de la patria potestad sobre sus hijos menores de edad.

Luego de lo anterior y de otros trámites procesales, el tribunal dio inicio a la vista de privación de patria potestad. Previo a la conclusión de dicho procedimiento, tanto la familia Vargas Crespo como el Departamento de la Familia recibieron una comunicación donde se señaló que, estando la trabajadora social presente, la señora Soler de la Rosa le causó daños emocionales a la referida menor al incurrir en conducta indebida en su presencia. Por consiguiente, el Departamento de la Familia presentó ante

el tribunal una moción sustentada por un Informe en la que solicitó que se suspendieran las relaciones materno filiales por ser perjudiciales para la menor. La familia Vargas Crespo hizo lo propio.

Ante tales solicitudes, el tribunal suspendió las relaciones materno filiales y ordenó que la menor fuese evaluada por un psicólogo perito del tribunal. Posteriormente, conforme a la recomendación del psicólogo, el tribunal mantuvo la suspensión de las relaciones materno filiales. No obstante lo anterior, durante la continuación de la vista en su fondo, una nueva jueza asignada al caso reinstaló las relaciones materno filiales.[4] Asimismo, dispuso que la interacción entre la señora Soler de la Rosa y su hija menor sería supervisada por la Oficina de Relaciones de Familia, adscrita al Departamento de Justicia.

En vista de que el tribunal asignó la supervisión de las relaciones materno filiales a otra agencia, el Departamento de la Familia solicitó que se le relevara de comparecer a las vistas. La familia Vargas Crespo se opuso a esta solicitud y explicó que el Departamento de la Familia había tenido un papel protagónico en el caso de autos desde el inicio del pleito mediante la supervisión de las relaciones materno filiales y la remoción de la menor

---

[4] La jueza que hasta ese momento estuvo a cargo de los procedimientos se tuvo que inhibir en vista de que atendió una solicitud de orden de protección de la trabajadora social del Departamento de la Familia ante las amenazas de la señora Soler de la Rosa.

de su hogar biológico. De igual forma, sostuvo que es el Departamento de la Familia, como representante del Estado en su función de *parens patriae*, el responsable de proteger a la menor adoptanda en el caso de autos dada la solicitud de privación de patria potestad por causa de maltrato.

El tribunal declaró con lugar la solicitud del Departamento de la Familia. Concluyó que el caso era uno entre partes privadas donde la única comparecencia de dicha agencia era a los fines de recomendar o no la adopción de la menor; que al dicha agencia no ser "parte" en el proceso, no tenía que comparecer a las vistas, o presentar prueba. Determinó además que, conforme al Art. 31 de la Ley para el Amparo a Menores, *supra*, en la vista a celebrarse sobre la procedencia de la privación de patria potestad estaba prohibido el uso de la información sobre la madre biológica que surgiera del expediente del Departamento de la Familia. Asimismo, a la luz de su interpretación del referido artículo, el foro de instancia dispuso que dentro del procedimiento de adopción también estaba vedada la utilización del conocimiento personal de los funcionarios del Departamento de la Familia, adquirido a raíz de la intervención con la menor. Por último, aclaró que la controversia restante era determinar si había o no razón para privar de la patria potestad sobre la menor a la señora Soler de la Rosa conforme a las disposiciones pertinentes del Código Civil de Puerto Rico, y no a la luz de la Ley para el Amparo a Menores, *supra*.

Oportunamente, la familia Vargas Crespo acudió ante el Tribunal de Apelaciones. Allí, sostuvo que incidió el tribunal sentenciador al excluir al Departamento de la Familia del procedimiento y al no permitir la utilización de la información que surgía tanto de los expedientes de la agencia como del conocimiento personal de sus funcionarios. El foro intermedio confirmó el dictamen de instancia.

Inconformes con dicha determinación, la familia Vargas Crespo acudió ante nos mediante moción en auxilio de jurisdicción y solicitud de *certiorari*. Luego de evaluar su solicitud, ordenamos la paralización de los procedimientos ante el Tribunal de Primera Instancia y le concedimos término al Procurador General y al Departamento de la Familia para que expusieran su posición sobre la controversia aquí planteada. Con el beneficio de sus comparecencias, resolvemos.

Debemos determinar, primero, si de acuerdo al ordenamiento jurídico en protección del menor procede que se le requiera al Departamento de la Familia que participe en el procedimiento de adopción cuando éste surge luego de que dicha agencia intercedió para proteger al menor de un alegado maltrato. Segundo, si la información recopilada durante la investigación del Departamento de la Familia por maltrato al menor adoptando puede utilizarse en un procedimiento de adopción posterior para propósitos de la privación de patria potestad.

II

A

Los hechos que dan lugar a la controversia ante nuestra consideración surgieron a la luz de las disposiciones de Ley para el Amparo a Menores en el Siglo XXI, Ley Núm. 342 del 16 de diciembre de 1999, 8 L.P.R.A. sec 441 *et seq*. No obstante, debemos señalar que tan reciente como el pasado 30 de noviembre entró en vigor la nueva Ley para el Bienestar y la Protección Integral de la Niñez, Ley Núm. 177 de 1ero de agosto de 2003, la cual deroga la Ley para el Amparo a Menores, *supra*. Ninguna de estas leyes, empero, dispone cómo resolver las controversias ante nuestra consideración. La necesidad de que el Departamento de la Familia participe en procedimientos de adopciones que surgen luego de que el menor adoptando es intervenido por dicha agencia por maltrato; y la posibilidad de que la información obtenida en una investigación de maltrato a menores sea utilizada en el procedimiento posterior de privación de patria potestad como parte de la adjudicación de una petición de adopción, no se trataron en la Ley para el Amparo a Menores, *supra*, ni en la nueva Ley para el Bienestar y la Protección Integral de la Niñez, *supra*. Tampoco se provee solución al respecto en la Ley de Adopción, *supra*.

En vista de lo anterior, al adjudicar las controversias aquí planteadas, examinaremos las referidas leyes en conjunto con todo el ordenamiento jurídico

dirigido a la protección de los mejores intereses del menor. Veamos.

Las personas menores de edad tienen el derecho a disfrutar del cuidado y protección del Estado cuando sus padres o familiares no cumplen con dicha responsabilidad. La Carta de Derechos de los Niños, Ley Núm. 388 de 31 de diciembre de 1998, 1 L.P.R.A. sec. 412, establece de forma clara y expresa que todo niño tendrá derecho a ser protegido por el Estado de cualquier forma de maltrato o negligencia que provenga de sus padres o de personas que lo tengan bajo su cuidado.

Cónsono con ello, y para propiciar el desarrollo del menor en un ambiente seguro y saludable en el cual se promueva su desarrollo social, emocional, físico e intelectual, la Asamblea Legislativa aprobó en 1999 la Ley para el Amparo a Menores, *supra*. Departamento de la Familia v. Ramos, res. 6 de marzo de 2003, 2003 T.S.P.R. 37. Según se desprende del texto de dicha ley, es el Departamento de la Familia la agencia responsable de implantar la política pública que enunciaba esta medida legislativa. La misma establecía la responsabilidad y la obligación del Departamento de la Familia de intervenir en casos de maltrato de menores y realizar los esfuerzos necesarios para fortalecer y mejorar la prevención, identificación, investigación y tratamiento de las situaciones de maltrato. Así pues, se le facultó para iniciar ante los tribunales los procedimientos que fuesen

necesarios para proteger el bienestar de los menores. Arts. 10, 14, 22 y 28 de la Ley para el Amparo a Menores, *supra*, 8 L.P.R.A. secs. 441(g), 442, 442(h), y 442(n). Actualmente, dicha obligación mantiene toda su vigencia según los artículos 4, 14, 31, 32, 52 y 53 de la nueva Ley para el Bienestar y la Protección Integral de la Niñez, *supra.*

La referida Ley para el Amparo a Menores, *supra*, proveía para que en casos en los cuales el menor no viva en un ambiente que garantice su bienestar y seguridad, el padre, madre o custodio sea privado de la custodia y/o patria potestad que ostenten sobre dicho menor. Departamento de la Familia v. Ramos, *supra.* Con el propósito de obtener un remedio expedito en situaciones que ameriten una intervención inmediata del Estado para asegurar la protección del menor, esta ley disponía un procedimiento de emergencia mediante el cual un Técnico de Servicios de la Familia o Trabajador Social del Departamento comparecía ante un tribunal y declaraba, bajo juramento, que la seguridad y bienestar del menor estaba en peligro inminente. De esta forma, solicitaba al foro judicial que tomara las medidas pertinentes para asegurar el bienestar de ese menor y le concediera la custodia provisional al Departamento de la Familia. Art. 35 de la Ley para el Amparo a Menores, *supra*. El artículo 37 de la Ley para el Bienestar y la Protección Integral de la Niñez, *supra*, contiene igual disposición.

La determinación de un juez en un procedimiento de remoción de custodia de emergencia es provisional; no tiene carácter de finalidad. Esto es así debido a que el procedimiento expedito de privación de custodia, para casos de emergencia, se puede llevar a cabo ex parte a fin de poder garantizar el mejor interés de los menores. Posteriormente, la ley dispone un procedimiento donde se le garantiza el debido proceso de ley a las partes que podrían ser privados permanentemente de la custodia y/o patria potestad que ostentan sobre sus hijos menores de edad removidos expeditamente de su custodia. Art. 38 de la Ley para el Amparo a los Menores, *supra*, 8 L.P.R.A. sec. 443c, Arts. 39, 41, 42 de la Ley para el Bienestar y la Protección Integral de la Niñez, *supra*.

Cabe destacar, que la denegatoria de la solicitud de remoción de custodia de emergencia no significa que el niño no es víctima de maltrato sino que la situación presentada ante el tribunal no constituye una emergencia que amerite que se prive a unos padres de la custodia de su hijo menor sin que se les provea un debido proceso de ley. Conforme a ello, hemos resuelto que **la denegatoria de una petición de custodia de emergencia no libera al Estado de su obligación de proteger a los menores, ni limita la responsabilidad del Departamento de la Familia o de los Procuradores Especiales de Menores de proseguir con el asunto de la manera que mejor beneficie al menor**. (Énfasis suplido). Departamento de Familia v. Ramos, *supra*.

B

Por otro lado, la patria potestad es el conjunto de derechos que tienen los padres con relación a la persona y a los bienes de los hijos no emancipados. Ex parte Torres, 118 D.P.R. 469 (1987). La misma, constituye una obligación que se le impone a los padres de educar, alimentar, cuidar de la salud física y mental, y proteger a los menores sobre los que ostentan la patria potestad. Arts. 153 y 166 del Código Civil, 31 L.P.R.A. secs. 601 y 634. Dicha obligación debe ser ejercida responsablemente en atención siempre al mejor bienestar del menor. Si los padres no cumplen con su obligación de ejercer la patria potestad conforme al mejor bienestar del menor, los tribunales podrán intervenir para restringir, suspender o hasta privarlos de la misma. Art. 166 del Código Civil, 31 L.P.R.A. sec. 634.

La privación de la patria potestad, como consecuencia de no ejercer la misma responsablemente, es un asunto público de tanta importancia que la Asamblea Legislativa otorgó la facultad al Departamento de la Familia de solicitar la privación de la patria potestad cuando esto fuese necesario para el mejor bienestar del menor. Art. 45 de la Ley para el Amparo a Menores, *supra,* 8 L.P.R.A. sec. 443(j); Art. 52 de la Ley para el Bienestar y la Protección Integral de la Niñez, *supra.* La Ley para el Amparo a Menores, *supra,* proveía para que el Departamento de la Familia solicitara la privación, restricción o suspensión

de la patria potestad del padre o de la madre de los menores que se encuentren bajo la custodia *de jure* o *de facto* de dicha agencia.[5] El Departamento de la Familia podía ejercer esta facultad ya sea: (i) dentro de cualquier procedimiento instado para proteger a un menor víctima de maltrato o (ii) **cuando estuviesen presentes las circunstancias descritas en el Artículo 166B del Código Civil de Puerto Rico**. *Id*. Art. 45 de la Ley para el Amparo a Menores, *supra,* 8 L.P.R.A. sec. 443(j). La nueva Ley para el Bienestar y la Protección Integral de la Niñez, *supra*, además de reiterar lo anterior es aún más firme en este aspecto y dispone que la solicitud de privación de patria potestad puede hacerse mediante moción y sin necesidad de presentar una demanda. Art. 52 de la Ley para el Bienestar y la Protección Integral de la Niñez, *supra.*

C

Una de las alternativas existentes para los menores que son removidos de sus hogares biológicos es la adopción.

---

[5] Asimismo, la Ley para el Amparo a Menores, *supra*, creó trece posiciones de "Procuradores de Familia Especiales para Situaciones de Maltrato", en adición a los ya existentes Procuradores de Familia, con el propósito de instar las acciones que procedan en casos de maltrato. Estos funcionarios, con el fin de garantizar la protección de los menores, tienen la obligación de atender solicitudes de restricción, privación o suspensión de la patria potestad de padres que no estén capacitados para ejercer la misma. Con ello, la Asamblea Legislativa reconoció claramente la necesidad de dotar al Estado de funcionarios para atender esta situación de maltrato. Véase Exposición de Motivos de la Ley Núm. 42 de 3 de marzo de 2002; Art. 56 de la Ley para el Amparo a e Menores, *supra,* 8 L.P.R.A. sec. 443(u); Art. 56 de la Ley para el Bienestar y la Protección Integral de la Niñez, *supra.*

La alternativa de adopción de los menores de edad responde al interés del Estado de proteger a los menores que son objetos de maltrato, desamparo o abandono; y de brindarle a esos menores menos afortunados la oportunidad de vivir dignamente dentro de una familia. Zapata Saavedra v. Zapata Martínez, res. el 20 de febrero de 2002, 2002 T.S.P.R. 24.

En la exposición de motivos de la Ley de Adopción, *supra*, el legislador calificó como inalienable el derecho de los menores de crecer dentro de un hogar feliz y saludable. También se destacó, una vez más, la responsabilidad que tiene el Estado de tomar todas las medidas que estén a su alcance para la protección y bienestar de los menores que sean víctimas de maltrato. Con el bienestar de los menores como norte, la intención legislativa va dirigida a prestar particular atención a los menores maltratados, abandonados y desamparados para que, mediante los mecanismos de adopción, éstos puedan formar parte de hogares estables. De esta manera, se trata de proveer a los menores de edad la protección a la que son acreedores y garantizarles las condiciones óptimas para su desarrollo físico, psicológico, mental y moral. Zapata Saavedra v. Zapata Martínez, *supra*; Exposición de Motivos de la Ley de Adopción, *supra*.

En cuanto al Departamento de Familia, la Ley de Adopción, *supra*, dispone que toda petición de adopción le sea notificada a dicha agencia a fin de que ésta "realice el informe del estudio social pericial correspondiente".

32 L.P.R.A. sec. 2699c. Dicho Informe incluirá las recomendaciones de dicha agencia en torno a la conveniencia de la adopción para que el tribunal pueda ejercer su poder de *parens patriae* con el propósito de lograr el bienestar y la conveniencia del menor.  32 L.P.R.A. 2699e.

A la luz de esta normativa, pasemos a discutir la situación que tenemos ante nos.

### III

En primer lugar, examinemos si es necesaria la participación del Departamento de la Familia en el procedimiento de privación de patria potestad que debe anteceder la adopción en el caso de autos.

Como mencionáramos, a la luz de su deber de *parens patriae*, el Estado tiene la responsabilidad de velar por aquellos menores que son víctimas de maltrato, abuso y negligencia, lo cual no concluye con la denegatoria de una solicitud de remoción de emergencia. Tiene, a su vez, el deber de proveer los servicios necesarios para fortalecer la familia de estos menores o, de esto no ser posible, proveerles un ambiente saludable para su desarrollo. Estas obligaciones del Estado permean todo el ordenamiento jurídico en protección del menor.  El caso de autos es un ejemplo de una situación en donde el Estado intervino y, en cumplimiento con su deber de *parens patriae*, logró que la menor fuese removida del hogar de su madre biológica y se le otorgara a un matrimonio, debidamente licenciado como hogar sustituto, la custodia provisional de ésta.

Nótese, que en el caso de marras la solicitud de remoción de custodia de emergencia promovida a la luz de las disposiciones de la Ley para el Amparo a Menores, *supra*, fue declarada sin lugar por el tribunal sólo luego de que la señora Soler de la Rosa voluntariamente entregara la custodia de A.M.V.S. Como resultado de esta intervención, el tribunal concedió provisionalmente la custodia a la familia Vargas Crespo y ordenó al Departamento de la Familia la supervisión de las relaciones materno filiales. Por un espacio de dieciocho meses, esta agencia supervisó activamente dichas relaciones materno filiales. Su participación, lejos de ser incidental, fue protagónica. Incluso, fue responsable de que el tribunal suspendiera las relaciones materno filiales posteriormente.

Desde antes de iniciarse todos los trámites judiciales, tanto el de adopción como el de remoción de custodia de emergencia, el Departamento de la Familia le ofreció servicios a la madre biológica de la menor. Aunque la madre acudió a la familia Vargas Crespo en su carácter personal para pedirles que se encargaran de la menor, fue a través de la intervención de las trabajadoras sociales del Departamento de la Familia que el matrimonio accedió al pedido. Desde el inicio, esta agencia estuvo a cargo de la supervisión de las relaciones materno filiales. Además, fue la que emitió el Informe sobre la conveniencia de la paralización de dichas relaciones y solicitó del tribunal la suspensión de las mismas; por último, fue el

Departamento de la Familia el que certificó el hogar de la familia Vargas Crespo como hogar de crianza y les otorgó la licencia necesaria para así hacer posible que éstos obtuvieran la custodia provisional de la menor en lo que se lograba la adopción.

Al Tribunal de Primera Instancia denegar la solicitud de remoción de custodia de emergencia, lo hizo no porque hubiese determinado que el bienestar de la menor no estaba amenazado, sino porque la madre biológica voluntariamente entregó la custodia de la menor a la familia Vargas Crespo. En vista de ello, de haber existido un peligro inminente para la menor, cesó en ese momento. Puede entonces decirse que el tribunal, aunque denegó la petición de remoción de custodia de emergencia, en efecto removió a la menor de la custodia de su madre biológica y la adjudicó provisionalmente a los Vargas Crespo.[6] En esa misma instancia, al tribunal ordenarle al Departamento de la Familia la supervisión de las relaciones materno filiales, ciertamente mantuvo a éste participando en el proceso de adopción y privación de patria potestad.

Cabe reiterar, además, que la denegatoria de una petición de custodia de emergencia no libera al Estado, representado por el Departamento de Familia, de su

---

[6] Cabe señalar que una de las alternativas contemplada por la ley para situaciones de emergencia es ubicar al menor en una familia que se estime conveniente. Art. 36 de la Ley para el Amparo a Menores, *supra*, 8 L.P.R.A. sec. 443(a). *Véase* Art. 43(b)(1) de la Ley para el Bienestar y la Protección Integral de la Niñez, *supra.*

obligación de proteger a los menores. Dicha denegatoria tampoco lo limita de proseguir con el asunto de la manera que mejor beneficie al menor. <u>Departamento de Familia v. Ramos</u>, *supra*. Una vez el Departamento de la Familia promueve la remoción de un menor de la custodia de los padres biológicos, dicha entidad debe participar en el procedimiento hasta que la menor se encuentre en una situación estable. Por consiguiente, aunque la petición de remoción de custodia de emergencia solicitada por el Departamento de la Familia en el presente caso fue declarada sin lugar, por las razones que explicamos anteriormente, *y ante las circunstancias particulares del presente caso*, dicha agencia tiene la responsabilidad de proseguir velando por el mejor bienestar de la menor y no puede desentenderse del caso hasta tanto se asegure que la menor ha encontrado un lugar donde desarrollar al máximo sus capacidades de manera saludable.

**En el caso de autos, para dar cumplimiento a la responsabilidad legal del Departamento de la Familia tanto ante la Ley para el Amparo a Menores, *supra*, como bajo la nueva Ley para el Bienestar y la Protección Integral de la Niñez, *supra*, el tribunal de instancia debió evaluar la importancia de la participación de dicha agencia en el procedimiento de adopción iniciado por la familia Vargas Crespo para que éste exponga su criterio, producto de más de dieciocho meses de observaciones, sobre la conveniencia de la privación de la patria potestad ostentada por la**

**señora Soler de la Rosa sobre la menor adoptanda.** Con ese fin el tribunal de instancia debió requerirle al Departamento de la Familia su participación en el procedimiento de adopción hasta tanto se adjudicara la patria potestad. En consideración a la relevancia de la información en poder del Departamento de la Familia para la adjudicación de la patria potestad, el tribunal de instancia abusó de su discreción al no permitir la participación de la referida agencia en el procedimiento. [7] Sólo de esta forma, puede el Departamento de la Familia cumplir con su obligación legal de proteger a la menor de cualquier forma de maltrato.

La posible participación del Departamento de la Familia en un procedimiento de adopción para los fines de la privación de la patria potestad de un menor con historial de maltrato surge, además, de la política pública de "promover la adopción de menores dentro de familias estables en vez de permitir que permanezcan en la inestabilidad de hogares sustitutos" y en reconocimiento de que la salud y seguridad de los menores es un interés apremiante del Estado. Art. 3 de la Ley para el Amparo a Menores, *supra*. Este es un deber que se desprende tanto de la anterior Ley para el Amparo a Menores, *supra*, como de la

---

[7] Es razonable pensar que si el Departamento de la Familia acudió a los tribunales solicitando la privación de custodia de emergencia, éste tenía motivos fundados y posiblemente evidencia para sustentar que la menor se encontraba en una situación de maltrato o negligencia que ameritaba la intervención del Estado de manera inmediata.

ahora vigente Ley para el Bienestar y la Protección Integral de la Niñez, *supra*, en los casos particulares como el de autos. De igual forma, en conjunto con esa función del Departamento de la Familia relacionada a la adjudicación sabia de la patria potestad en un procedimiento de adopción de un menor removido de su hogar por maltrato, dicha agencia también debe cumplir, *según lo estime el tribunal*, con las funciones que le impone la Ley de Adopción en estos procedimientos, como por ejemplo, realizar un informe pericial y recomendar la adopción.

Los procedimientos de privación de patria y de adopción no pueden ser tratados como asuntos totalmente privados donde se excluya toda participación del Estado, independientemente de las circunstancias. Dicha participación cobra mayor importancia cuando nos encontramos ante casos en donde hubo maltrato y se busca la privación de la patria potestad para una subsiguiente adopción. De acuerdo al ordenamiento jurídico vigente, el tribunal tiene facultad para determinar, a la luz de las circunstancias de cada caso, si es necesaria la participación del Estado en las investigaciones y los procesos de privación de patria potestad luego de una investigación por maltrato que culminó en el subsiguiente procedimiento de adopción.

**Valga enfatizar que la norma que aquí disponemos responde a las circunstancias particulares de este caso y no debe entenderse que modifica de ninguna forma el**

**propósito de la Ley de Adopción, *supra*, de simplificar y agilizar los procedimientos que dispone. No todo caso de adopción que surge luego de una intervención por maltrato a un menor requiere la participación del Departamento de la Familia conforme se dispone en el caso de autos, sino solamente cuando el tribunal determine que es necesario para el mejor bienestar del menor y que ello no dilataría irrazonablemente el procedimiento en detrimento del menor.**

En síntesis, abusó de su discreción el tribunal inferior al excluir al Departamento de la Familia del pleito. Ello tuvo el efecto de impedir que éste cumpliese con su responsabilidad de prevenir, investigar y tratar las situaciones de maltrato según lo ordenaba el Art. 28 de la Ley para el Amparo a Menores, *supra*;[8] le restó importancia a las recomendaciones de dicha agencia en cuanto a la conveniencia de restablecer las relaciones materno filiales, a pesar de ser ésta la entidad con la experiencia y los conocimientos para hacer dicha recomendación; y le dificultó la elaboración del Informe que sirve de guía a los tribunales para que éstos, en el procedimiento de adopción, puedan ejercer efectivamente su poder de *parens patriae* según establecido en el Art. 1 de la Ley de Adopción, *supra*. En fin, dicha decisión obstaculizó la participación del Departamento de la Familia como entidad que tiene la responsabilidad de velar porque

---

[8] 8 L.P.R.A. sec. 442(n); Art. 4 de la Ley para el Bienestar y la Protección Integral de la Niñez, *supra*.

los menores crezcan en un ambiente propicio para su desarrollo intelectual, físico, emocional y psicológico. Sin lugar a dudas, los tribunales deben ser cuidadosos al determinar si van a prescindir de su participación en estos procedimientos.

Conforme a todo lo anterior, no podemos sino concluir que, de acuerdo al ordenamiento jurídico en protección a los mejores intereses del menor, el tribunal de instancia debió requerirle al Departamento de la Familia, como representante del Estado, que participe en el procedimiento de adopción en vista de las circunstancias aquí presentes.

IV

Por otra parte, debemos determinar si el derogado Art. 29 de la Ley para el Amparo a Menores, 8 L.P.R.A. sec. 442(o) –ahora Art. 26 de la Ley para el Bienestar y la Protección Integral de la Niñez, *supra*–, tiene el efecto de impedir que la información sobre la madre biológica que surja del expediente producto de la intervención que al amparo de dicha legislación realizó el Departamento de la Familia, sea utilizada en el procedimiento de privación de patria potestad que se ventila como parte del trámite de la petición de adopción.

Los tribunales inferiores determinaron que, como la privación de patria potestad y custodia no se realizaba a tenor con la Ley para el Amparo a Menores, *supra*, la información contenida en dichos expedientes no podía utilizarse en el presente procedimiento por estar la misma

cobijada bajo el palio de confidencialidad conferido por la susodicha disposición. Bajo el mismo razonamiento se excluyó además el testimonio de aquellos funcionarios que tuviesen conocimiento personal de la controversia en virtud de su intervención como funcionarios del Departamento de la Familia. Erraron los tribunales *a quo* al así actuar. Veamos.

A

El Art. 29 de la Ley para el Amparo Menores, 8 L.P.R.A. sec. 442(o), establecía que los expedientes que se preparan durante el proceso de investigación de situaciones de maltrato en donde el Departamento de la Familia intervenía al amparo del poder otorgado por dicha ley eran confidenciales, excepto en los casos y circunstancias en que específicamente autorizaba la propia ley. Conforme a ello, el Art. 31 de esta misma ley disponía que:

> [n]inguna persona, oficial, funcionario, empleado o agencia tendrá acceso a los expedientes **a menos que sea para cumplir con los propósitos directamente relacionados con la administración de esta ley**... (*Énfasis suplido*). 8 L.P.R.A. sec. 442(q).

Este último artículo además, identificaba las personas o entidades que sí tendrían acceso a esos expedientes, entre ellas, la agencia que tuviese la responsabilidad legal o autorización para cuidar, ofrecer tratamiento o supervisar al menor o al padre, madre u otra persona responsable por el bienestar del menor que sea el sujeto del informe. 8 L.P.R.A. sec. 442(q)(e); y el tribunal, si determinaba que el acceso a los expedientes era necesario

para decidir una controversia ante su consideración. El caso de acceso del expediente por el tribunal, estaba limitado a la inspección en cámara por el juez, a menos que éste decidiera que la publicación de la información era necesaria para resolver cierta controversia ante sí. 8 L.P.R.A. sec. 442(q)(g). Igualmente, tenía acceso a dicho expediente por mandato expreso de la ley, cualquier funcionario, incluido el fiscal, responsable de la administración, supervisión o legislación relacionada con la prevención o tratamiento de los casos de protección cuando esté en el ejercicio de tales funciones. 8 L.P.R.A. sec. 442(q)(h).

Por su parte, la Ley para el Bienestar y la Protección Integral de la Niñez, *supra*, contiene iguales disposiciones referentes a la confidencialidad de los expedientes investigativos del Departamento de la Familia en sus artículos 26 y 27. De igual forma, esta legislación provee las mismas excepciones al mandato de confidencialidad que disponía la Ley para el Amparo a Menores, *supra*. Arts. 27(a), (b), (f) de la Ley para el Bienestar y la Protección Integral de la Niñez, *supra*.

A la luz de esta normativa, veamos si actúo correctamente el Tribunal de Primera Instancia al excluir del procedimiento de privación de patria potestad y de adopción la información del expediente del Departamento de la Familia.

B

En el caso de epígrafe, el tribunal prohibió durante el juicio sobre privación de patria potestad la utilización de toda información producto de la supervisión del Departamento de la Familia de la relación entre la menor adoptanda y la señora Soler de la Rosa. Con esta actuación el tribunal dejó desprovisto a la familia Vargas Crespo de la evidencia necesaria para demostrar al tribunal las causas que justifican el que se prive permanentemente a la señora Soler de la Rosa de la patria potestad que ostenta sobre la menor A.M.V.S.

De entrada, debemos destacar que no cuestionamos la legitimidad de la ley para establecer la confidencialidad de los expedientes relacionados con las investigaciones que realiza el Departamento de la Familia en protección de los mejores intereses del menor. Art. 29 de la Ley Para el Amparo a Menores, *supra*; Art. 26 en la Ley para el Bienestar y la Protección Integral de la Niñez, *supra*. Lo que examinamos en esta instancia, es si se configura una de las excepciones que establece la propia ley; es decir, si la cuestión aquí planteada se refiere al uso de la información para cumplir con alguno de los propósitos de la referida legislación. Art. 31 de la Ley Para el Amparo a Menores, *supra*; Art. 27 en la Ley para el Bienestar y la Protección Integral de la Niñez, *supra*.

Al respecto, tanto el tribunal de instancia como el tribunal apelativo concluyeron que, como el tribunal había

denegado la petición de remoción de custodia de emergencia, el caso se había convertido en uno entre partes privadas, en el cual el Departamento de la Familia no tenía otra participación que la de emitir su recomendación en cuanto a la conveniencia de la adopción. De esta forma, resolvieron que el procedimiento de privación de patria potestad se haría al amparo del Código Civil; y no a tenor con la Ley para el Amparo a Menores, *supra*. Consecuentemente, determinaron que el expediente producto de la intervención hecha bajo dicha legislación no podría utilizarse por la familia Vargas Crespo. Estimamos que este razonamiento no responde a los mejores intereses del menor conforme a las circunstancias aquí planteadas.

En este caso particular, aún cuando el procedimiento de privación de patria potestad y custodia se realice al amparo de las disposiciones del Código Civil, el tribunal debió requerir la participación del Departamento de la Familia al adjudicar la patria potestad. Ello con el propósito de asegurar que el foro judicial pueda hacer una determinación que sirva de la mejor manera a los intereses del menor. Por ende, cuando el tribunal determine que de esa manera se sirve mejor a bienestar del menor, el Departamento de la Familia podrá participar en procedimientos de adopción relacionados con situaciones de maltrato a menores pues, en estos casos, la particiapción del Estado no concluye con la denegatoria de la petición de remoción de custodia de emergencia. <u>Departamento de la</u>

Familia v. Ramos, *supra.* Esta es una norma que aplica con igual vigencia tanto bajo la derogada Ley para el Amparo a Menores, *supra*, como la ahora vigente Ley para el Bienestar y Protección Integral de la Niñez, *supra*. Por consiguiente, a pesar de que el expediente levantado como producto de las observaciones de los funcionarios del Departamento de la Familia durante su intervención bajo la Ley al Amparo a Menores, *supra*, está cobijado por el mandato de confidencialidad que otorgaba el referido artículo 29, dicha información debe estar disponible en el procedimiento de adopción que se lleva a cabo en el caso de autos, a discreción del tribunal.

Una vez el Departamento de la Familia interviene por maltrato del menor adoptando, la información recopilada por dicha agencia puede ser la idónea para promover la adjudicación correcta de la patria potestad, más allá de limitarse a recomendar la adopción. La Ley para el Amparo a Menores, *supra*, y su nueva contraparte, le imponen al Departamento de la Familia el deber continuo de velar para que al menor removido de su hogar por maltrato se le provea un hogar seguro y estable; ya sea que el menor vuelva a su hogar biológico, permanezca bajo la custodia de dicha agencia o sea adoptado.

En estas instancias además, como ya explicamos, si el tribunal lo estima necesario, el Estado debe participar en el procedimiento de privación de patria potestad, en cuyo caso, a la luz del derogado Art. 31 de la Ley para el

Amparo a Menores, *supra,* la información contenida en el referido expediente puede ser utilizada por los funcionarios y entidades que expresamente se autorizan para cumplir con los propósitos directamente relacionados con la administración de la Ley para el Amparo a Menores, *supra,* o la Ley para el Bienestar y la Protección Integral de la Niñez, *supra*.

Referente a ello, el artículo 31 de la Ley para el Amparo a Menores, *supra*, disponía que la persona legalmente autorizada para ejercer la custodia de emergencia de un menor tendría acceso a dicho expediente si necesitare cierta información para determinar la conveniencia de poner a la menor bajo custodia.[9] También permitía que la agencia con la responsabilidad legal de supervisar al menor o al padre, madre u otra persona responsable por el bienestar de éste, tuviese acceso a dicho expediente. En este caso, es el Departamento de la Familia la entidad responsable de velar por el mejor bienestar del menor, ya sea por orden del Tribunal o por orden de la Asamblea Legislativa, según disponía la Ley para el Amparo a Menores, *supra*, y conforme se dispone ahora en la Ley para el Bienestar y la Protección Integral

---

[9] Reconocemos que el Art. 27 de la vigente Ley para el Bienestar y la Protección Integral de la Niñez, *supra*, no autoriza el acceso a los expedientes a aquellas personas legalmente autorizados para ejercer la custodia de emergencia, como lo hacía el Art. 31 de la Ley para el Amparo a Menores, *supra*. Sin embargo, debemos recordar que los hechos del caso de marras ocurrieron bajo ésta última legislación.

de la Niñez, *supra*. Por lo tanto, esta agencia tiene acceso por mandato expreso de la ley a la información en cuestión.

Asimismo, los "Procuradores Especiales de Relaciones de Familia" o los "Procuradores de Relaciones de Familia Especiales para Situaciones de Maltrato" tienen acceso a estos expedientes por ser éstos los funcionarios responsables de la administración, supervisión o legislación relacionada con la prevención o tratamiento de los casos de protección cuando estén en el ejercicio de tales funciones. Por último, también los tribunales tienen acceso a estos expedientes cuando esto es necesario para la dilucidación de una controversia. 8 L.P.R.A. secs. 442(q), (d), (e), (g) y (h). En el caso de autos, todas estas personas pueden utilizar los expedientes del Departamento de la Familia siempre que sea para procedimientos relacionados con la administración de esta ley protectora de menores, como lo sería, la privación de la patria potestad ostentada por la madre de la menor y la colocación de ésta en un hogar donde se le provea un ambiente propicio para su desarrollo físico, psicológico y emocional.

En conclusión, aunque coincidimos en que los expedientes creados por la intervención del Departamento están cobijados por el manto de la confidencialidad según disponía el Art. 29 de la derogada Ley para el Amparo a Menores, *supra*, estimamos que, en el caso de autos, se dan algunas de las circunstancias descritas por el Art. 31 de

la misma ley que permiten que determinadas personas tengan acceso a dichos expedientes siempre que sea para la consecución de los objetivos que allí se establecían. A la luz de ello, resolvemos que la información contenida en dicho expediente y la adquirida por los funcionarios como producto de su intervención puede utilizarse para propósitos de la privación de patria potestad a la señora Soler de la Rosa dentro del procedimiento de adopción.

V

Por los fundamentos esbozados anteriormente, se expide el auto solicitado. Procede revocar el dictamen del Tribunal de Circuito de Apelaciones y devolver el recurso al Tribunal de Primera Instancia para que prosiga con los procedimientos de forma consistente con lo aquí resuelto. Se ordena la participación del Departamento de la Familia en el procedimiento de adopción para propósitos de la privación de patria potestad. Además, se autoriza la utilización de la información contenida en el expediente del Departamento de la Familia, o el testimonio de aquellos funcionarios con conocimiento personal pertinente, producto de su intervención a tenor con la Ley para el Amparo a Menores, *supra*, en el caso autos.


Federico Hernández Denton
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Kenneth Vargas Crespo
María L. Crespo González

Demandantes-Peticionarios

    v.                               CC-2003-207   Certiorari

María del C. Soler de la Rosa

Demandada Recurrida


SENTENCIA


San Juan, Puerto Rico, a 30 de diciembre de 2003.

Por los fundamentos esbozados anteriormente, se expide el auto solicitado. Procede revocar el dictamen del Tribunal de Circuito de Apelaciones y devolver el recurso al Tribunal de Primera Instancia para que prosiga con los procedimientos de forma consistente con lo aquí resuelto. Se ordena la participación del Departamento de la Familia en el procedimiento de adopción para propósitos de la privación de patria potestad. Además, se autoriza la utilización de la información contenida en el expediente del Departamento de la Familia, o el testimonio de aquellos funcionarios con conocimiento personal pertinente, producto de su intervención a tenor con la Ley para el Amparo a Menores, *supra*, en el caso autos.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo