EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sonia Cedeño Aponte y Josué Orta Rivera<br><br>Peticionarios<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, Lcda. Glorimar Andújar Matos en representación del Departamento de la Familia y otro<br><br>Recurridos | Certiorari<br><br>2018 TSPR 199<br><br>201 DPR ____ |

Número del Caso: CC-2018-647

Fecha: 4 de diciembre de 2018

Abogado de la parte peticionaria:

   Lcda. Sheila M. Torres Matías

Materia: Resoluciones del Tribunal con Voto particular disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sonia Cedeño Aponte y
Josué Orta Rivera

     Peticionarios

        v.                   CC-2018-647       Certiorari

Estado Libre Asociado de
Puerto Rico, Lcda. Glorimar
Andújar Matos en representación
del Departamento de la Familia
y otro

     Recurridos

RESOLUCIÓN

San Juan, Puerto Rico, a 4 de diciembre de 2018.

A la petición de certiorari, no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Rivera García, Estrella Martínez y Colón Pérez hubieran expedido el recurso de certiorari. El Juez Asociado señor Estrella Martínez emitió un Voto particular disidente al que se unieron la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García.

                        José Ignacio Campos Pérez
                    Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Sonia Cedeño Aponte y
Josué Orta Rivera

    Peticionarios

      v.                  CC-2018-647     Certiorari

Estado Libre Asociado de
Puerto Rico, Lcda. Glorimar
Andújar Matos en representación
del Departamento de la Familia
y otro

    Recurridos


RESOLUCIÓN

San Juan, Puerto Rico, a 4 de diciembre de 2018.

Examinada la *Solicitud para que el Caso sea Atendido por el Tribunal en Pleno, Solicitud de Unión de Casos y Solicitud de Vista Oral* presentada por la Lcda. Sheila M. Torres Matías en representación de los peticionarios, y ante la denegatoria al recurso de certiorari, se provee no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García hubiese provisto ha lugar a la consolidación de los recursos. El Juez Asociado señor Estrella Martínez hubiese consolidado los recursos a la luz de lo expuesto en su voto particular disidente en el caso de referencia.


          José Ignacio Campos Pérez
        Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Sonia Cedeño Aponte & Josué Orta Rivera<br><br>Peticionarios<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, Departamento de la Familia & Departamento de Justicia<br><br>Recurridos | CC-2018-0647 | *Certiorari* |

Voto particular disidente emitido por el Juez Asociado señor ESTRELLA MARTÍNEZ al cual se unen la Jueza Asociada señora PABÓN CHARNECO y el Juez Asociado señor RIVERA GARCÍA.

San Juan, Puerto Rico, a 4 de diciembre 2018.

Una vez más, el Departamento de la Familia ejerció mano libre para violar los términos reglamentarios relacionados con asuntos de menores. Igualmente preocupante, excluyó negligentemente del registro de adoptantes a las personas que se encargaron de criar por dos años a una menor que llegó a su seno familiar desde los cinco días de nacida, proveniente de un hogar con padres biológicos maltratantes. A pesar de ello, los foros inferiores le concedieron la peligrosa deferencia excesiva e incorrecta en Derecho. Como agravante, no reconocieron la legitimación activa del padre y la madre de crianza para solicitar amparo a la Rama Judicial y cuestionar estos reprobables incumplimientos. De esta forma, dejaron en el olvido el principio rector del mejor bienestar del menor. En consecuencia, DISIENTO y hubiese expedido el recurso de *certiorari* ante nuestra consideración.

Examinemos el trasfondo fáctico y procesal de la controversia de epígrafe.

## I.

A tan solo cinco días de nacida, la menor DMMA fue removida de su hogar debido a acusaciones de maltrato de menores en contra de sus padres biológicos. A raíz de ello, el Departamento de la Familia obtuvo la custodia de la menor y la ubicó en un hogar de crianza bajo el cuido de la Sra. Sonia Cedeño Aponte y el Sr. Josué Orta Rivera (señora Cedeño Aponte y señor Orta Rivera o peticionarios). Luego del transcurso de dos años, mediante el cual los peticionarios se responsabilizaron y cuidaron de la menor, la señora Cedeño Aponte y el señor Orta Rivera decidieron adoptar a DMMA, ya que consideraron que ella "pasó a formar parte de su familia".[1] En virtud de lo anterior, el 24 de octubre de 2016 los peticionarios presentaron una solicitud de adopción ante la Unidad de Adopción de Carolina.

El 1 de marzo de 2017, casi cinco meses luego de la presentación de la solicitud de adopción, la Unidad de Adopción notificó su contestación a la petición e informó a los peticionarios que el estudio social que se llevó a cabo resultó favorable.[2] Dicha notificación disponía que el expediente de la señora Cedeño Aponte y del señor Orta Rivera sería tramitado a las oficinas centrales de la Administración de Cuidado Sustituto y Adopción, quienes en los próximos treinta días emitirían una notificación final certificando si los peticionarios cumplían

---

[1] Certiorari, pág. 3.

[2] Apéndice del certiorari, págs. 101-102. Adviértase que, a pesar de que el documento tiene fecha de 13 de febrero de 2017, consta que el depósito de la notificación en el correo fue el 1 de marzo de 2017.

con todos los requisitos exigidos por la Ley Núm. 86-2009, _infra_, para poder ser ingresados al _Registro Estatal Voluntario de Adopción_ (REVA).

El 21 de junio de 2017, casi tres meses en exceso de los treinta días señalados, la Administración de Cuidado Sustituto y Adopción notificó a los peticionarios que carecían de ciertos documentos para poder ser ingresados al REVA.[3] La señora Cedeño Aponte y el señor Orta Rivera afirmaron que éstos habían entregado los documentos solicitados junto a su petición original. Sin embargo, en aras de agilizar el ya dilatado proceso, entregaron nuevamente los documentos al siguiente día de ser notificados, a saber, el 22 de junio de 2017. En consecuencia, la Administración de Cuidado Sustituto y Adopción emitió una certificación ingresando a los peticionarios al REVA, retrotrayendo su efectividad al 21 de junio de 2017.

Desafortunadamente, mientras los peticionarios pasaban por el proceso administrativo antes descrito, el Departamento de la Familia removió a DMMA del hogar de la señora Cedeño Aponte y del señor Orta Rivera. Esto, pues el Panel de Selección de Candidatos del REVA (Panel) eligió a otra pareja como hogar adoptivo para DMMA. Posteriormente, esa pareja adoptó oficialmente a DMMA.

Ante este lamentable escenario, los peticionarios realizaron un sinnúmero de gestiones administrativas y judiciales para paralizar el proceso de adopción, para conocer los fundamentos que el Panel tomó en consideración en su selección y para que el

---

[3]_Apéndice del certiorari_, pág. 103. Adviértase que, a pesar de que el documento tiene fecha de 2 de marzo de 2017, consta la firma de la Especialista de Adopción certificando que la entrega del documento fue el 21 de junio de 2017.

Departamento de la Familia les reconociera su derecho a ser escuchados.

Eventualmente, el foro primario hizo alusión a la necesidad de alguna resolución u orden que fundamentara la selección del Panel de los padres adoptivos. A raíz de ello, los peticionarios acudieron al Departamento de la Familia en búsqueda de ese documento. Por su parte, el Departamento de la Familia notificó que no existe resolución alguna que documente la decisión del Panel a favor de los que resultaron ser los padres adoptivos de la menor.

Debido a lo anterior, los peticionarios acudieron nuevamente al Tribunal de Primera Instancia mediante una petición de mandamus dirigida tanto al Departamento de la Familia como el Departamento de Justicia. En esa ocasión, solicitaron que se reprodujera dicha resolución y que se les notificara de ello, para poder así recurrir a través del correspondiente mecanismo de revisión judicial. Por otro lado, la parte recurrida presentó una Solicitud de sentencia sumaria mediante la cual arguyó que los peticionarios no tenían legitimación activa para solicitar la resolución del Panel porque, al momento de escoger a la pareja adoptiva, la señora Cedeño Aponte y el señor Orta Rivera aun no formaban parte del REVA. El Departamento de Justicia fundamentó su postura al sostener que la selección de los padres adoptivos de DMMA se realizó el 23 de mayo de 2017, mientras que los peticionarios fueron ingresados al REVA el 21 de junio de 2017.

En respuesta a ello, los peticionarios presentaron una Moción en cumplimiento de orden en oposición a solicitud de sentencia sumaria en la cual indicaron que la demora en incluir

a éstos en el REVA se debió precisamente a la negligencia del Departamento de la Familia. De igual forma, sostuvieron que el Departamento nunca fundamentó o evidenció con documento alguno que, en efecto, el 23 de mayo de 2017 el Panel seleccionó a la pareja adoptiva. Arguyeron los peticionarios que la elección de esa fecha es arbitraria y tiene como propósito privar a los peticionarios de su derecho a ser notificados de la decisión tomada en su detrimento. Asimismo, añadieron que, en la alternativa de que el foro primario determinara que la fecha de selección fue el 23 de mayo de 2017, los peticionarios aun gozaban de legitimación activa para ser notificados de ello porque tanto la presentación de la solicitud de adopción y la notificación de la favorabilidad fueron antes de la referida fecha, entiéndase, el 26 de octubre de 2016 y el 1 de marzo de 2017 respectivamente.

A esos efectos, el Tribunal de Primera Instancia dictó sentencia sumaria a favor de la parte recurrida. Concluyó el foro primario que debido a que los peticionarios fueron ingresados al REVA con posterioridad a la fecha de selección, la señora Cedeño Aponte y el señor Orta Rivera no ostentaban legitimación activa para ser notificados sobre la adopción de una menor que cuidaron desde sus cinco días de nacida.

A la luz de lo anterior, los peticionarios acudieron mediante un recurso de apelación al Tribunal de Apelaciones. Por su parte, el Departamento de la Familia presentó el correspondiente Alegato en oposición. Ambas partes reiteraron, en esencia, los mismos argumentos esbozados ante el Tribunal de Primera Instancia. Adviértase que, en esta ocasión, el Departamento de Justicia optó por ser eximido de continuar

compareciendo en el caso pues, ante los distintos pleitos gestionados por los peticionarios, el Procurador General sostuvo que "existe la posibilidad de que surjan diferencias de criterios sobre cómo instrumentar los mejores intereses de la menor entre la agencia administrativa y el Procurador".[4]

Así las cosas, el Tribunal de Apelaciones confirmó el dictamen del Tribunal de Primera Instancia. El foro intermedio concluyó que, a pesar de que les **"llama la atención y parece ser cuestionable la manera en que el Departamento de la Familia manejó dicho proceso"**, determinó que los peticionarios no tenían legitimación activa al no ser parte del REVA al momento de la determinación del Panel.[5] Asimismo, aseveró que "el hecho de que una agencia administrativa cometa un error en la aplicación de la ley, no crea un derecho que las partes puedan reclamar".[6] Ante una Moción de reconsideración de parte de los peticionarios, el Tribunal de Apelaciones proveyó no ha lugar.

Por todo lo anteriormente expuesto, la señora Cedeño Aponte y el señor Orta Rivera acuden ante este Tribunal mediante un recurso de certiorari arguyendo que las acciones del Departamento de la Familia, más allá de meros errores administrativos, fueron contrarias a derecho y en contravención del debido proceso de ley. En esencia, aseveran que la determinación del hecho de que la fecha de adopción de DMMA fue el 23 de mayo de 2017 no tiene fundamento alguno en el expediente. Los peticionarios plantean que, debido a que los

---

[4]Apéndice Certiorari, pág. 176.

[5](Énfasis suplido). Sentencia, Apéndice del Certiorari, pág. 16.

[6]Íd.

foros descansan únicamente en esa fecha para privarlos de su día en corte, la misma debe estar acompañada de la debida documentación. Además, señalan que el Departamento de la Familia cometió un error en su interpretación del derecho al concluir que la fecha de ingreso al REVA es la que unilateralmente establece la agencia. Según los peticionarios, la fecha de ingreso al REVA es la fecha en que se presenta una solicitud de adopción o, en la alternativa, cuando se provee un estudio social favorable a la pareja adoptiva.

Ante el craso incumplimiento del Departamento de la Familia con las disposiciones legislativas y reglamentarias correspondientes que redundó en la privación de un proceso justo y adecuado para la adopción de una menor, hubiese expedido el auto solicitado.

Ante tal cuadro fáctico y procesal, procedo a exponer los fundamentos que sustentan mi disenso.

**II**

**A.**

Como es sabido, la doctrina de justiciabilidad exige que los tribunales ausculten sobre la legitimación activa de las partes que solicitan un remedio ante sí. Hernández Torres v. Hernández Colón et al., 131 DPR 593, 599 (1992) (citando a E.L.A. v. Aguayo, 80 DPR 552 (1958)). La legitimación activa, al igual que su equivalente de *standing* en Estados Unidos, es una herramienta de autolimitación judicial que le permite a los tribunales abstenerse de "resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado". Íd. pág. 598 (citando a E.L.A. v. P.R. Tel. Co., 114 DPR 394, 399 (1983)). De esta manera, se busca garantizar que "el promovente de la acción

es uno cuyo interés es de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia". Col. Ópticos de P.R. v. Vani Visual Center, 124 DPR 559, 564 (1989) (citando a Hernández Agosto v. Romero Barceló, 112 DPR 407, 413 (1982)).

Debido a lo anterior, quien comparezca a un tribunal en reclamo de algún remedio tiene que justificar que goza de legitimación activa para ello. En esta tarea, deberá demostrar que (1) ha sufrido un daño claro y palpable; (2) el referido daño es real, inmediato y preciso, y no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) su causa de acción se ampara en la Constitución o en algún estatuto. Hernández Torres v. Hernández Colón, supra (citando a Hernández Agosto v. Romero Barceló, supra, pág. 414).

**B.**

La revisión judicial de determinaciones administrativas le provee a los tribunales la encomienda de delinear la discreción de las agencias administrativas al garantizar que sus decisiones se encuentren en el marco de los poderes delegados y que sean consecuentes con la política pública que las origina. Torres Rivera v. Policía de PR, 196 DPR 606, 625-626 (2016); Mun. de San Juan v. J.C.A., 149 DPR 263, 279 (1999). En esa tarea, los tribunales revisores debemos conceder cierta deferencia a las decisiones administrativas. Torres Rivera v. Policía de PR, supra, pág. 626. Esto, pues las agencias gozan de experiencia y conocimiento especializado sobre los asuntos ante su

consideración, lo cual ampara sus dictámenes con una presunción de legalidad y corrección. Íd.

De esa forma, el análisis de los tribunales al examinar las decisiones administrativas debe ser conforme a los criterios de razonabilidad y deferencia. Asoc. Fcias v. Caribe Specialty et al. II, 179 DPR 923, 940 (2010). Particularmente, nuestra función revisora debe enfocarse en tres criterios principales, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. Íd.

Cónsono con ello, los tribunales deben intervenir en las decisiones administrativas cuando éstos concluyan que se ha actuado arbitraria, ilegal o irrazonablemente. Rolón Martínez v. Caldero López, res. el 27 de agosto de 2018, 2018 TSPR 157, pág. 4. "En esas circunstancias, cederá la deferencia que merecen las agencias en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra". Íd. (citando a JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 187 (2009)).

De igual forma, hemos dispuesto que, para poder ejercer nuestra función revisora, es necesario que las agencias fundamenten sus decisiones con determinaciones de hecho y conclusiones de derecho. Mun. De San Juan v. J.C.A., supra, pág. 280. De esta manera, fomentamos que los organismos administrativos lleven expedientes completos y fundamentados, haciéndolos así aptos para un examen adecuado por los tribunales revisores. Tanto es así, que "[a]un cuando no se exige una explicación basada en determinaciones de hecho a la manera de los procedimientos formales, en la adjudicación de

procedimientos informales deben mediar razones suficientes que pongan en conocimiento a las partes y al tribunal de los fundamentos que propiciaron tal decisión.". Íd., pág. 281 (citando a Godreau & Co. v. Com. Servicio Público, 71 DPR 649, 655-657 (1950)).

Por un lado, las determinaciones de hecho se sostendrán por los tribunales mientras las mismas se basen en evidencia sustancial. A su vez, hemos dispuesto que evidencia sustancial es aquella prueba relevante que una mente razonable podría entender adecuada para sostener una conclusión. Rolón Martínez v. Caldero López, supra (citando a Otero v. Toyota, 163 DPR 716, 728 (2005) (Per curiam); Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2004)). Por tanto, debemos respetar las resoluciones administrativas hasta tanto no se demuestre mediante evidencia suficiente que la presunción de legalidad ha sido superada o invalidada. Torres Rivera v. Policía de PR, supra.

Por su parte, las determinaciones de derecho pueden ser revisadas en su totalidad. No obstante, la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo. En vez, hemos sostenido que el tribunal descartará el criterio de la agencia cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". Rolón Martínez v. Caldero López, supra (citando a Asoc. Fcias v. Caribe Specialty et al. II, supra, pág. 941).

## C.

Como es conocido, el Estado ostenta un poder de *parens patriae*, el cual lo faculta a salvaguardar y a proteger a los menores de edad. Pena v. Pena, 164 DPR 949, 959 (2005) (citando

a Ortiz v. Meléndez, 164 DPR 16, 27 (2005)). El factor determinante en el ejercicio del poder de *parens patriae* es el bienestar de los menores. Torres, Ex parte, 118 DPR 469, 480 (1987). El bienestar del menor cobra tanta importancia, que de haber conflicto entre éste e intereses ajenos, siempre debemos resolver a favor del menor. Ortiz v. Meléndez, supra, pág. 28.

En esta encomienda de proteger y defender los intereses de los menores, el poder de *parens patriae* del Estado le permite utilizar el vehículo de la adopción para brindar un hogar estable, seguro y saludable a menores de edad. Rivera Báez, Ex parte, 170 DPR 678, 705-706 (2007); Estrella, Monge v. Figueroa Guerra, 170 DPR 644, 668 (2007); Vargas v. Soler, 160 DPR 790, 805-806, 810 (2003). Ante una lamentable tendencia de maltrato de menores en Puerto Rico, donde de 9.6 niños de cada 1,000 menores sufren algún tipo de maltrato, la adopción figura una herramienta importante del Estado en el ejercicio de su deber de protección de los niños.[7] Esto, pues la adopción cumple una función social importante en nuestra sociedad de "darle a los niños sin padres la oportunidad de criarse en un hogar donde los puedan atender debidamente". Virella v. Proc. Esp. Rel. Fam., 154 DPR 742, 754 (2001).

Ahora bien, la adopción es un acto jurídico que genera consecuencias significativas e importantes. La adopción conlleva la desvinculación total de un menor con su familia biológica y la consecuente filiación con aquellos que deseen ser sus padres. Zapata et al. v. Zapata et al., 156 DPR 278, 286 (2002) (citando

---

[7]Instituto de Estadísticas de Puerto Rico, Perfil del maltrato de menores en Puerto Rico: Año fiscal federal 2012-2013, pág. 30, https://estadisticas.pr/files/Publicaciones/perfilMaltratoMenores_201507.pdf (última visita 15 de noviembre de 2018).

a Virella v. Proc. Esp. Rel. Fam., supra, pág. 753; Feliciano Suárez, Ex parte, 117 DPR 402, 406 (1986)). Debido a la envergadura e importancia del proceso de la adopción, su uso no debe ser ligero. Toda determinación de adopción debe "descansa[r] principalmente sobre la premisa de la conveniencia y bienestar del menor". Virella v. Proc. Esp. Rel. Fam., supra, pág. 754 (citando a Ex parte J.A.A., 104 DPR 551, 559 (1976).

Cónsono con ello, la adopción está rigurosamente regulada en nuestro ordenamiento. Asimismo, ha sido objeto de numerosas legislaciones y correspondientes enmiendas. Entre ellas, la Ley de reforma integral de procedimientos de adopción, Ley Núm. 186-2009, proveía el esquema del procedimiento de adopción de un menor en Puerto Rico. 8 LPRA secs. 1051-1071. La Ley Núm. 186-2009 fue derogada por la Ley de adopción de Puerto Rico, Ley Núm. 61-2018, http://www.oslpr.org/2017-2020/leyes/pdf/ley-61-27-Ene 2018.pdf. Sin embargo, los hechos ante nuestra consideración ocurrieron durante la vigencia de la Ley Núm. 186-2009.

Reconociendo que "el proceso para adoptar un menor es uno complicado, acompañado de una larga y tortuosa espera" la Ley Núm. 186-2009 en su momento innovó el procedimiento de adopción de menores en Puerto Rico y creó el REVA. 2009 Leyes de Puerto Rico 1631. Mediante el REVA, se esperaba agilizar el proceso al crear un sistema que identificara con facilidad a las personas interesadas en adoptar y a los menores en necesidad de ser adoptados. Íd., pág. 1632. De esta forma, la Asamblea Legislativa afirmó que el REVA "garantizará a las personas que el proceso de adopción sea uno **justo y ágil, en el cual sus**

**oportunidad y posibilidades de adoptar sean reales**". (Énfasis suplido). Íd.

Para lograr estos objetivos, la Ley Núm. 186-2009 provee que el Departamento de la Familia adoptará la reglamentación necesaria para el funcionamiento del REVA. 8 LPRA sec. 1065 (ed. 2014). Debido a lo anterior, se aprobó el <u>Reglamento para regir los procesos y procedimientos del Departamento de la Familia en la atención de las solicitudes del servicio de adopción</u>, Reglamento 7878, Departamento de la Familia, 30 de junio de 2010. A esos fines, el Reglamento 7878 provee que las personas que deseen tramitar una adopción deberán radicar una solicitud a esos fines en un Centro de Orientación de Adopción. Íd., Art. IX, sec. 9.1.

Por su parte, el Departamento realizará un estudio social durante los próximos **treinta días** de la presentación de la solicitud de adopción. Íd. Una vez conllevado el estudio social, "se notificará a los(as) solicitantes la acción tomada, a saber: **aceptarlos(as) o denegarlos(as) como posibles candidatos(as) a padres adoptivos**". (Énfasis suplido). Íd. Cónsono con ello, la información que se exhibirá en el REVA en torno a las partes adoptantes disponibles será según el orden cronológico en el cual las solicitudes fueron presentadas. Íd., Art. IX, sec. 9.2.1. Sin embargo, el Reglamento 7878 especifica que un estudio social favorable no garantiza la ubicación de un menor en un hogar adoptivo determinado. Íd., Art. IX, sec. 9.1.

Una vez la información de una parte adoptante es ingresada al REVA, la selección de los padres adoptivos la conlleva un panel de cinco miembros conforme al <u>Reglamento para regir los procesos del panel de selección de candidatos para adopción</u>,

Reglamento 8597, Departamento de la Familia, 30 de junio de 2010. Así, pues, el Panel debe evaluar los hogares adoptivos potenciales y sus capacidades de satisfacer los intereses de los menores en necesidad de ser adoptados. Íd., Art. 15. Particularmente, el Panel debe hacer un análisis integrado de los numerosos factores que pueden ser indicadores del mejor bienestar para un menor. Así, el Panel podrá considerar distintos aspectos de los padres adoptivos potenciales como los antecedentes sociales, nacionales y culturales, trasfondo educativo, solvencia económica, reputación en la comunidad, entre otros. Íd.

Sin embargo, conforme a la política pública de proteger rigurosamente los intereses de los menores, el Panel tiene como criterio rector "garantizar que el trámite sea uno **expedito** y en observancia del **[m]ejor [b]ienestar de los/as [m]enores**". (Énfasis suplido). Íd., Art. 15. En consecuencia, el procedimiento de selección para la posterior adopción no debe ser autómata ni rígido; al contrario, debe ser sensible a las circunstancias que presente cada caso.

El Reglamento 8597 establece que, para realizar las correspondientes y necesarias determinaciones de adopción, el Panel se reunirá en sesiones. Íd., Art. 9. Toda sesión con propósito de llevar a cabo una selección de adopción deberá ser documentada mediante una minuta que especifique la determinación efectuada en beneficio de los menores considerados en la reunión. Íd. Además, cuando la determinación sea relacionada con un hogar adoptivo potencial que haya "expresado interés en adoptar a un/a menor en específico", se documentarán las razones para elegir o rechazarlo y **se emitirá un Resolución al respecto**

**para que las partes adoptantes afectadas puedan apelar la determinación mediante revisión judicial.** Íd.

En aras de cumplir con la intención legislativa de garantizar procedimientos "justos y ágiles", tanto la Ley Núm. 186-2008 como el Reglamento 7878 establecen que el procedimiento de adopción no debe excederse de un término de **setenta y cinco días** "desde su inicio hasta su resolución final". 2009 Leyes de Puerto Rico 1658; Reglamento 7878, *supra*, Art. 3.

Examinado el derecho aplicable, procedo a exponer las razones de mi disenso.

### III

### A.

Como expusimos anteriormente, la menor de edad DMMA fue colocada en el hogar de la señora Cedeño Aponte y el señor Orta Rivera a sus cinco días de nacida. En su hogar sustituto de crianza, los peticionarios acogieron a DMMA como parte de su propia familia y diligentemente comenzaron los trámites para su adopción. Al presentar su solicitud de adopción el 24 de octubre de 2016, el Departamento de la Familia contaba con un término de **treinta días** para realizar la correspondiente investigación de los peticionarios mediante un estudio social y emitir una decisión notificando si se consideraban un hogar adoptivo potencial o no. Reglamento 7878, *supra*, Art. IX, sec. 9.1. Sin embargo, la Unidad de Adopción, en violación del término reglamentario, se demoró casi **cinco meses** en esta encomienda. El 1 de marzo de 2017 fue cuando finalmente notificaron a la señora Cedeño Aponte y al señor Orta Rivera su estudio social favorable. Con esta determinación, según el propio Reglamento

7878, los peticionarios se consideraron desde ese momento un hogar adoptivo potencial. Íd.

No obstante lo anterior, en la notificación a los peticionarios sobre la favorabilidad del estudio social, la Unidad de Adopción informó que estarían remitiendo su expediente a las oficinas centrales de la Administración de Cuidado Sustituto y Adopción, quienes en los próximos **treinta días** notificarían si cumplían con todos los requisitos exigidos por la Ley Núm. 86-2009 para poder ser ingresados al REVA. Nuevamente, en exceso del término que el mismo Departamento dispone en la notificación y con casi **cuatro meses** de tardanza, el 21 de junio de 2017 la Administración de Cuidado Sustituto y Adopción advirtió a los peticionarios que su solicitud no contaba con todos los documentos necesarios para cumplir con la Ley Núm.86-2009. A pesar de que alegadamente los peticionarios ya habían entregado esos documentos, en aras de agilizar el proceso de DMMA, éstos sometieron nuevamente los documentos tan pronto como **el día siguiente** de la notificación. En esta ocasión, la Administración de Cuidado Sustituto y Adopción emitió un documento certificando que los peticionarios fueron ingresados al REVA el 21 de junio de 2017.

A raíz de las dilaciones excesivas antes expuestas, los peticionarios actualmente no ostentan la custodia de DMMA. Esto, pues mientras se tramitaba el proceso administrativo para catalogar a la señora Cedeño Aponte y el señor Orta Rivera como hogar adoptivo potencial, el Panel seleccionó a otra pareja como padres de DMMA y, posteriormente, el Departamento de la Familia conllevó el correspondiente procedimiento de adopción ante el tribunal. Como agravante en ese procedimiento judicial, el

Departamento de la Familia no informó las anomalías aquí reseñadas y que motivan mi disenso.

Es altamente reprochable la conducta y el tracto procesal que ha generado el Departamento de la Familia en la controversia de epígrafe. Luego de una situación tan desafortunada en torno a los padres biológicos de DMMA, el Departamento de la Familia dilató excesivamente el procedimiento de adopción que intentaron conllevar la señora Aponte Cedeño y el señor Orta Rivera. En vez de fomentar la estabilidad del hogar familiar de DMMA, el Departamento de la Familia implantó un procedimiento mecánico y autómata que culminó con la adopción de DMMA por otras personas, privando a los peticionarios de una participación adecuada. No solo faltaron crasamente a la política pública y a la intención legislativa de proteger a los menores de edad mediante procesos de adopción justos y ágiles, sino que también incumplieron una tras otra vez con los términos reglamentarios específicos que los gobierna. Todo esto, en un proceso tan sensitivo e importante como lo es la selección del hogar de una menor de edad con un trasfondo de maltrato y abuso.

Debemos tener presente que tanto la Ley Núm. 86-2009 como los demás estatutos y reglamentos que regulan la adopción, tienen como médula la vida humana de menores de edad que se encuentran en circunstancias de extrema vulnerabilidad. En consecuencia, la falta de sensibilidad y diligencia con la que han actuado el Departamento de la Familia, sus entidades y sus funcionarios es significativamente incompatible con su función de proveer la mayor estabilidad y protección posible a los menores de edad bajo su custodia. De igual forma, reflejan gran indiferencia a las consecuencias tan directas y palpables que

genera un procedimiento de esta envergadura en uno de los sectores más vulnerables en una sociedad: los niños y niñas.

A pesar de lo anterior, los tribunales inferiores validaron el procedimiento de adopción descrito que mantuvo al margen los intereses y la estabilidad de la menor DMMA. En vez de reconocer las graves faltas del Departamento de la Familia y los daños significativos que éstas generaron en los peticionarios, los foros inferiores otorgaron la mayor deferencia al organismo administrativo. Así, sustentan la preocupante conducta negligente del Departamento de la Familia mediante la justificación de que el Panel del REVA, al seleccionar a los padres adoptivos de un menor de edad, solo toma en consideración a los hogares adoptivos potenciales cuya información haya sido incluida en el REVA. Por tanto, concluyen que, debido a que la información de los peticionarios se ingresó en el REVA el 21 de junio de 2017, éstos no ostentan legitimación activa para revisar la determinación del Panel, puesto que la selección de los padres adoptivos de DMMA se generó el 23 de mayo de 2017. Sin esbozar análisis alguno de los efectos que pueden generan una segunda separación de su hogar en DMMA, validan el procedimiento de adopción.

Ante ese cuadro, los foros inferiores dejaron atrás el principio rector del bienestar del menor que debe estar inmiscuido en toda determinación de adopción. De igual forma, validan la ejecución insensible y autómata de un procedimiento que debe ser estrechamente dirigido hacia la protección de los menores de edad y hacia la búsqueda de la mayor estabilidad familiar. El procedimiento de adopción no es una fórmula matemática ni mecánica. Por tanto, al ratificar un proceso de

adopción que no tomó en consideración a las personas que criaron a la menor desde sus cinco días de nacida, quienes sometieron oportuna y diligentemente una solicitud de adopción de la menor, refleja gran indiferencia e insensibilidad.[8]

Además, los foros inferiores despachan la controversia ante su consideración al razonar, sin más, que la señora Cedeño Aponte y el señor Orta Rivera no tienen legitimación activa para impugnar la adopción de una menor que cuidan desde sus cinco días de vida. Sin embargo, su razonamiento limitado no contempló los requisitos más básicos de legitimación activa.

Indudablemente, la señora Cedeño Aponte y el señor Orta Rivera han sufrido el daño palpable e inmediato de perder la custodia de una menor que, para todos sus efectos, ha sido su hija por los últimos dos años. Asimismo, esa pérdida está directamente relacionada con la conducta negligente, arbitraria e irrazonable del Departamento de la Familia, quien incumplió con los términos estatutarios y reglamentarios causando una excesiva dilatación del procedimiento de adopción de los peticionarios. Finalmente, la causa de acción de los peticionarios nace de la Ley Núm. 186-2009, la cual provee que los hogares adoptivos potenciales que no sean seleccionados por el Panel pueden acudir en revisión judicial. Reglamento 7878, *supra*, Art. XVI, secs. 16.1-16.2. Ciertamente, para el Departamento de la Familia los peticionarios no eran un hogar adoptivo potencial para propósitos del REVA. Sin embargo, como

---

[8]Es menester destacar que la Ley Núm. 61-2018 sí reconoce el derecho de las personas que ostentan hogares de crianza temporeros, como el de los peticionarios, a ser escuchados durante los procedimientos de adopción de los menores que cuidan. Esto, sin depender de si los hogares de crianza solicitan la adopción del menor o no.

expondremos más adelante, la señora Aponte Cedeño y el señor Orta Rivera debieron considerarse como un hogar adoptivo potencial cuya información debió estar incluida en el REVA al momento que el Panel seleccionó a otra pareja.

**B.**

El Departamento de la Familia, más allá de incumplir con los términos estatutarios y reglamentarios, actuó arbitraria e irrazonablemente. Asimismo, al realizar determinaciones de hechos sin evidencia alguna en el expediente y al llegar a conclusiones de derecho erróneas, se invalidó la presunción de corrección y legalidad de sus decisiones. En consecuencia, los tribunales inferiores debieron intervenir en la controversia ante sí. Veamos.

En primer lugar, es menester destacar que el hecho de que la información de los peticionarios no se encontraba en el REVA a la fecha alegada de la selección de los padres adoptivos **se debe precisa y únicamente a las acciones del Departamento de la Familia.** Los peticionarios presentaron su solicitud el 24 de octubre de 2016. Del Departamento de la Familia haber cumplido con los términos correspondientes, el **24 de noviembre de 2016** los peticionarios hubiesen contado con el estudio social favorable. Conforme al Reglamento 7878, en ese momento, debieron haber sido ingresados al REVA. Reglamento 7878, *supra*, Art. IX, sec. 9.1.

Sin embargo, como se explicó anteriormente, en la notificación que hizo la Unidad de Adopción a los peticionarios sobre la favorabilidad del estudio social, se les representó que en los próximos treinta días se les certificaría si cumplían con los requisitos de la Ley Núm. 86-2009 y procederían a ser

ingresados al REVA. A pesar de que entendemos que dicha interpretación del derecho no es cónsona con las disposiciones claras del Reglamento 7878, de haber sido diligente el Departamento de la Familia en esa encomienda, esa certificación se hubiese emitido el **24 de diciembre de 2016**. En consecuencia, en ambos escenarios, los peticionarios hubiesen estado en el REVA para la fecha de la selección de los padres adoptivos de DMMA.

En segundo lugar, además de esta interpretación errónea del Derecho, el Departamento de la Familia hizo una determinación de hecho sin fundamento alguno en el expediente. Por tal razón, al ser una determinación de hecho que no está basada en evidencia sustancial, tal como lo exige nuestro ordenamiento, no podemos sostenerlo ni validarlo. Asoc. Fcias v. Caribe Specialty et al. II, supra, pág. 940.

Particularmente, durante todo el proceso administrativo y litigioso que ha requerido la controversia de epígrafe, el Departamento de la Familia ha afirmado que la selección del Panel de los padres adoptivos de DMMA se conllevó el 23 de mayo de 2017. Esto, para sostener que la inclusión de los peticionarios en el Registro el 21 de junio de 2017 los priva del derecho de impugnar la decisión. Sin embargo, no obra documento **alguno** en el expediente que evidencie la fecha ni los fundamentos para la selección de los padres adoptantes. Esto, a pesar de que el Reglamento 8597 dispone que **todas** las sesiones que conlleven una selección de adopción se deben documentar mediante una minuta. De igual forma, el reglamento especifica que, si un hogar adoptivo ha expresado su interés en la adopción de un menor y éste no es seleccionado, el Panel tiene que emitir

una resolución a esos efectos para que éste pueda acudir en revisión judicial. Aun si sostenemos el argumento de que no se debía emitir esa resolución a favor de los peticionarios porque aún no se consideraban un hogar adoptivo potencial, de todas maneras, el Panel está obligado a documentar sus determinaciones mediante minuta. En fin, hemos resuelto consecuentemente que, por imperativo del debido proceso de ley, hasta en los procedimientos informales las agencias administrativas deben fundamentar sus decisiones. Mun. De San Juan v. J.C.A., supra, pág. 281. Por tanto, el Departamento de la Familia no tiene razón alguna para justificar la falta de documentación del proceso.

Lo anterior es muy preocupante porque se utilizó precisamente esta fecha de selección por el Panel, que no se sostiene con fundamento ni evidencia alguna, para despojar a los peticionarios de su día en corte. De la misma manera, al no reproducir el referido documento, el Departamento de la Familia privó a la parte peticionaria de un debido proceso. Asimismo, impide que los tribunales descarguen responsablemente su función revisora.

De igual forma, es menester resaltar que la falta de presentación de evidencia alguna del proceso de selección de adopción nos lleva a inferir que el Panel no generó esa minuta. Esto significa que en un procedimiento de tanta envergadura como lo es la selección de quienes serán los padres de un menor de edad, el Departamento de la Familia está tomando decisiones sin documentación ni fundamento alguno. Dicha conducta negligente y arbitraria es reprochable e inquietante.

Como agravante, no es la primera vez que la falta de diligencia del Departamento de la Familia ha perjudicado significativamente el bienestar de un menor de edad. A modo de ejemplo, en Muñoz Sánchez v. Báez de Jesús, 195 DPR 645 (2016), este Tribunal intervino urgentemente en una controversia porque una menor de edad estaba siendo impedida de ser transferida a los Estados Unidos junto a su madre porque los trámites estaban siendo dilatados por el Departamento de la Familia. Esto, pues, entre otras gestiones, incumplieron con el término de treinta días para presentar un informe de un estudio social. Íd., pág. 652. En esa ocasión, precisamos que "[e]l dilatado trámite procesal de este caso devela un incumplimiento reprobable de un procedimiento que tiene como norte brindar certeza y estabilidad al entorno familiar de un menor de edad". Íd., pág. 653. Hoy se repite la historia y, por tanto, suscribo este disenso para descargar mi responsabilidad de evitar que el rigorismo técnico y el cuadro de negligencia procesal descrito desvíen el norte principal que debe imperar en estos procesos: el mejor bienestar del menor.

**IV**

Por todo lo anterior, hubiese expedido el recurso de *certiorari* ante nuestra consideración y revocaría tanto al Tribunal de Primera Instancia como al Tribunal de Apelaciones.

Luis F. Estrella Martínez
Juez Asociado