Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CORAL RIVERA MORELL<br><br>Demandante Recurrida<br><br>v.<br><br>SCHUYLER MATTEW WHELAN<br><br>Demandada Peticionaria | TA2025CE00198<br><br>Consolidado<br><br>TA2025AP00280 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.:<br>**AR2023RF00511**<br>ARL572025-00264<br><br>Sobre:<br>Divorcio (Ruptura Irreparable) |
|---|---|---|
| CORAL RIVERA MORELL<br><br>Demandante Apelada<br><br>v.<br><br>SCHUYLER MATTEW WHELAN<br><br>Demandada Apelante | | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.:<br>**AR2023RF00511**<br><br>Sobre:<br>Divorcio (Ruptura Irreparable) |

Panel especial integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Candelaria Rosa, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de abril de 2026.

Comparece el señor Schuyler Matthew Whelan mediante recurso de apelación y solicita que revoquemos la *Sentencia* del Tribunal de Primera Instancia, Sala Superior de Arecibo, emitida el 11 de junio de 2025. Igualmente, el señor Whelan recurre vía *certiorari* para solicitar la revocación de la *Orden de Protección Enmendada* que dictó dicho foro el 10 de junio de 2025. Por los fundamentos que expresaremos, revocamos la *Sentencia* recurrida, a la vez que expedimos el auto de *certiorari* para modificar la *Orden de Protección Enmendada*.

En síntesis, el 13 de marzo de 2021, el señor Whelan y la señora Coral Rivera Morell contrajeron matrimonio en el Municipio de Rincón, Puerto Rico, habiendo previamente procreado dos (2) hijos que nacieron en Atlanta, Georgia. Poco después, el 29 de julio de 2021, ambas partes, de manera separada, presentaron demandas de divorcio en el Tribunal Superior del Condado de Crawford del estado de Georgia (en adelante, "Tribunal de Georgia"). Según el señor Whelan, éste había sido víctima de trato cruel por la señora Rivera Morell, aunque también admitió que fue investigado por el Condado de Crawford Department of Family and Children Services (DFCS) por presuntamente haber abusado sexualmente de sus hijos, sin que dicha investigación acabara con cargos criminales. De su parte, la señora Rivera Morell alegó que el señor Whelan abusó físicamente de ella y de sus hijos menores de edad, cometió adulterio, se intoxicaba y consumía sustancias controladas ilegales frecuentemente, todo por lo cual solicitó que se les concediera custodia temporera y permanente a las partes, pero que la señora Rivera Morell tuviera la custodia física primaria, entre otros asuntos.

Posteriormente, el Tribunal de Georgia autorizó que la señora Rivera se mudara a Puerto Rico junto a sus hijos menores. Además, el referido Tribunal ordenó el establecimiento de relaciones paternofiliales de manera supervisada ante las denuncias de maltrato presentadas por la señora Rivera en dicha jurisdicción. Específicamente, esta supervisión fue por razón de que el señor Whelan demostraba una conducta impulsiva y adicción sexual, más que desobedecía órdenes judiciales de no comunicarse con la señora Rivera Morell y presentaba problemas con la autoridad.

Mientras tanto, el señor Whelan se sometió a varias evaluaciones sicológicas de las que surgió que dicho paciente padecía de un serio problema de impulsividad—en relación, particularmente, a la acusación de que el señor Whelan se masturbó en presencia de su hija menor de edad—aunque recomendaron que el señor Whelan se sometiera a un examen de polígrafo, por no poder concluirse si el señor Whelan tenía intención de abusar sexualmente de los menores de edad. Dicho examen de polígrafo se hizo el 12 de julio de 2022, el cual produjo resultados negativos en cuanto a alguna actividad sexual con un menor de edad. Dicho examen de polígrafo se hizo el 12 de julio de 2022, el cual produjo resultados negativos en cuanto a alguna actividad sexual con un menor de edad.

Ocurrido lo anterior, el 7 de junio de 2023, la señora Rivera Morell radicó una demanda de divorcio por ruptura irreparable, custodia, patria potestad y alimentos en el Tribunal de Primera Instancia, Sala Superior de Arecibo, bajo el Caso Núm. AR2023RF00511, lo cual ocasionó una controversia sobre la jurisdicción del foro local. Luego de varios trámites procesales, el Tribunal de Apelaciones resolvió, en el recurso KLAN202400229, que en cuanto a la demanda presentada por la señora Rivera Morell el Tribunal de Puerto Rico tiene jurisdicción sobre la controversia.

Así las cosas, del expediente surge que el 15 de junio de 2023, en el Caso Núm. AR2023RF00511—también conocido como el Caso Núm. ARL2462023-00549—el Tribunal de Primera Instancia, Sala Municipal de Arecibo, expidió una orden de protección al amparo de la *Ley para la Seguridad, Bienestar y Protección de Menores*, Ley Núm. 246-2011 (8 LPRA ant. sec. 1101 *et seq.*), a favor de la hija menor de

las partes, ante señalamientos de actos lascivos cometidos por el señor Whelan mientras compartía con sus hijos menores el fin de semana del 9 al 11 de junio de 2023. Se desprende que el 5 de septiembre de 2023 y el 13 de octubre de 2023, bajo el Caso Núm. ARL2462023-00549—con el de esta última fecha también clasificado bajo el Caso Núm. ARL572023-00549—el Tribunal *a quo* extendió la orden en varias ocasiones durante la pendencia de la demanda que presentó la señora Rivera, y a la cual ésta última extensión se allanó el señor Whelan. Estas extensiones tuvieron vigencia desde el 5 de septiembre de 2023 hasta el 13 de octubre de 2023, y del 13 de octubre de 2023 al 13 de enero de 2024, respectivamente.

A raíz de las mismas alegaciones de actos lascivos, presuntamente ocurridos en el fin de semana del 9 al 11 de junio de 2023, el Tribunal de Primera Instancia, Sala Municipal de Aguadilla, en el Caso Núm. OPVS-20-AGL1482024-071, acogió la solicitud *ex parte* de la señora Rivera Morell y expidió otra orden de protección para víctimas de violencia sexual, en virtud de la *Ley para la Protección de las Víctimas de Violencia Sexual en Puerto Rico*, Ley Núm. 148-2015 (8 LPRA sec. 1281 *et seq.*), con vigencia del 26 de enero de 2024 hasta el 20 febrero de 2024. En la última vista sobre este asunto específico, y a la que acudieron ambas partes, el referido foro emitió una orden de protección final por el término de un año—es decir, del 25 de marzo de 2024 al 25 de marzo de 2025.

Por todo lo acontecido, el 29 de enero de 2025, la Unidad Social de Familia y Menores del Departamento de la Familia, por órdenes del Tribunal de Primera Instancia de Arecibo, en el Caso Núm. AR2023RF00511, presentó un *Informe Social Forense*. En él, se

dispuso (1) que el señor Whelan admitió haber sido infiel a la señora Rivera Morell en múltiples ocasiones, además de haber abusado de bebidas embriagantes, sustancias controladas y pornografía, al punto de identificarse como un adicto al sexo; y (2) que el señor Whelan igualmente admitió que incumplió con una orden de protección al intentar de comunicarse con sus hijos. Asimismo, el *Informe* mencionó detalladamente las conclusiones llegadas por los sicólogos estadounidenses que evaluaron al señor Whelan, así como que el personal de una escuela puertorriqueña explicó que la hija les dijo que su padre "le había hecho cosas malas" durante una visita reciente, mientras que, en una visita a la Unidad Social de Familia y Menores, ambos menores indicaron que no querían ver al padre. Además, a pesar de la Dra. Jamitza Burés Torres, trabajadora social, descartar la existencia de una mala relación entre el señor Whelan y los menores de edad, y acusar a la señora Rivera Morell de enajenación parental, el *Informe* indica que la señora Rivera Morell acusó a dicha trabajadora social de grabar al padre y los menores para una promoción del Programa Renacer Social sin la autorización de la madre, presentando evidencia fotográfica de tal promoción.

El 6 de febrero de 2025, el Tribunal apelado emitió una *Orden* a propósitos de (1) autorizar el envío de copias del *Informe Social Forense* a las partes para que estas sean utilizadas única y exclusivamente a los efectos de prepararse para el Caso Núm. AR2023RF00511; y (2) conceder a las partes quince (15) días para mostrar causa por la cual el Tribunal no debería acoger las recomendaciones del informe. Mientras que la señora Rivera Morell solicitó que se acogiera las recomendaciones del *Informe Social*

*Forense*, el señor Whelan se opuso a dicho informe, toda vez que, entre otros asuntos, (1) existían profesionales que habían tenido intervención con las partes en este caso que no fueron entrevistados; y (2) no se consideró un plan de relaciones supervisadas, relaciones virtuales o llamadas telefónicas, privando totalmente al señor Whelan de sus derechos que emanan de la patria potestad. Además, el señor Whelan informó, dentro de un término concedido por el Tribunal apelado, que había contratado los servicios de un perito como parte del proceso de impugnación.

Entre tanto, el 9 de abril de 2025 y en el Caso Núm. AIS2025G0001—Caso Núm. AG2024CR00045-1 en Sistema Unificado de Manejo y Administración de Casos (SUMAC)—el Tribunal de Primera Instancia, Sala Superior de Aguadilla, emitió una *Resolución* en la cual dispuso que el 11 de febrero de 2025, el señor Whelan registró una alegación de culpabilidad por un caso de maltrato, luego de haberse reclasificado de la acusación original por actos lascivos. Por ello, el Tribunal recurrido refirió al señor Whelan a un programa de desvío para su reeducación y readiestramiento por un (1) año.

A pesar de esto, y durante el trámite procesal en los foros de Puerto Rico, el 23 de enero de 2024, el Tribunal de Georgia emitió un *Compliance Order* y ordenó a la señora Rivera Morell a cesar toda acción ante los Tribunales de Puerto Rico en cuanto a la custodia o derechos de visitación de sus hijos. Igualmente, el 15 de mayo de 2025, el Tribunal de Georgia concedió custodia legal y física temporera al señor Whelan, toda vez que la señora Rivera Morell alegadamente continuó frustrando, dilatando y obstruyendo los procedimientos del

foro. Más aun, dicho Tribunal determinó que la señora Rivera Morell había estado cortando las comunicaciones entre el señor Whelan y sus hijos, y haciendo falsas alegaciones sobre la conducta del padre. Luego de otras alegadas desobediencias, dicho foro ordenó el encarcelamiento de la señora Rivera Morell, a la cual ésta respondió que el Tribunal carecía de jurisdicción sobre el caso. Ante este argumento, el Tribunal de Georgia reordenó la encarcelación antes descrita y la entrega de los menores de edad a la abuela paterna de estos.

A consecuencia de las acciones de dicho Tribunal, el 30 de mayo de 2025, el Tribunal de Primera Instancia de Arecibo, en el Caso Núm. AR2023RF00511, ordenó a cualquier entidad del Gobierno de Puerto Rico a abstenerse de ejecutar o diligenciar las órdenes emitidas por el Tribunal de Georgia, sin la previa autorización del Tribunal de Arecibo. Asimismo, el Tribunal ordenó al señor Whelan a abstenerse y desistir, so pena de desacato y de cualquier otra consecuencia jurídica, de continuar el litigio de controversias ante los tribunales del estado de Georgia, puesto que el foro local es el que ostenta la jurisdicción sobre la materia, las partes y los menores.

Por fin, en el Caso Núm. ARL572025-00264, el 10 de junio de 2025, el Tribunal de Primera Instancia de Arecibo emitió una *Orden de Protección Enmendada*,[1] con vigencia del 10 de junio de 2025 hasta que los menores de edad cumplieran veintiún (21) años, toda vez que al Tribunal no le queda la más mínima duda que los menores han sido víctimas de maltrato, negligencia y abuso sexual por el señor Whelan. Además, el Tribunal ordenó, una vez más, que el señor Whelan

---

[1] Esta orden de protección fue enmendada a los fines de corregir el epígrafe en las hojas que estaban anejadas a ella.

desistiera del caso ante el Tribunal de Georgia, toda vez que el foro de Puerto Rico concluyó que el señor Whelan promovió y obtuvo la custodia de sus hijos mediante dicho Tribunal, más que dicho foro emitiera una orden de arresto contra la señora Rivera Morell, en total desprecio de lo dictado por el Tribunal de Apelaciones en el caso KLAN202400229.

Poniendo punto final a todo este proceso, el 11 de junio de 2025, el Tribunal de Primera Instancia emitió una *Sentencia* y determinó que la señora Rivera Morel tendría la custodia física y legal de los menores de edad, y se le privaría al señor Whelan de la patria potestad sobre dichos menores, al amparo del Artículo 615 del Código Civil de 2020, 31 LPRA sec. 7322. Ante las solicitudes de reconsideración del señor Whelan, el Tribunal apelado resolvió sin lugar.

Insatisfecho, el señor Whelan recurre ante este Tribunal y alega que, en cuanto al recurso TA2025AP00280, el Tribunal de Primera Instancia erró al (1) dictar una sentencia privándolo de la patria potestad de sus hijos sin cumplir con los criterios mínimos del debido proceso de ley; (2) fundamentar la referida sentencia a base de hechos de una vista señalada y citada para otro asunto procesal, totalmente distinto a la privación de la patria potestad; (3) utilizar prueba documental no anunciada y privándolo de su derecho a confrontar la misma y presentar prueba a su favor; y (4) no considerar el *Informe Social Forense* y al no citar a la trabajadora social que realizó la investigación y quien no contempló como una recomendación la privación de la patria potestad.

En cuanto al recurso TA2025CE00198, el señor Whelan argumenta que el Tribunal de Primera Instancia, en resumidas cuentas, erró al (1) atender una solicitud de orden de protección solicitada por la

señora Rivera Morell dentro de un procedimiento ordinario de custodia; (2) expedir una orden de protección sin cumplir con los dispuesto en el Artículo 26 de la Ley Núm. 57-2023 (8 LPRA sec. 1692); (3) basar su decisión en un referido investigado por el Departamento de la Familia y por el cual ya se habían expedido dos órdenes de protección ahora vencidas y de casos con designaciones alfanuméricas distintas; (4) expedir una orden de protección por el término de hasta que los menores cumplan mayoría de edad; (5) concluir que el señor Whelan acudió al Tribunal de Georgia a solicitar el arresto de la recurrida y tomar esto como una conducta constitutiva de maltrato o negligencia; y (6) imponer otras condiciones al señor Whelan relacionadas al caso del Tribunal Superior de Georgia.

Presentada las oposiciones de la señora Rivera Morell, resolvemos. Comenzando con la evaluación del recurso TA2025AP00280, vale recordar que todo procedimiento adversativo debe satisfacer las exigencia mínimas de un debido proceso procesal, es decir, se les debe garantizar a las partes de un pleito el derecho a (1) recibir una notificación adecuada del proceso; (2) que el proceso institucional se realice ante un adjudicador imparcial; (3) tener la oportunidad de ser oído; (4) a contrainterrogar testigos y a presentar prueba oral y escrita a su favor; (5) la asistencia de un abogado; (6) que la decisión se fundamente en el expediente; y (7) que la decisión sea fundamentada y explicada. *Domínguez Castro v. ELA*, 178 DPR 1 (2010) (citando a *Almonte et al. v. Brito*, 156 DPR 475 (2002); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881 (1993); *Rivera Santiago v. Srio. Hacienda*, 119 DPR 265 (1987); *Cleveland Bd. Of*

*Educ. v. Loudermill*, 470 US 532 (1985)). Véase Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1.

Ahora bien, cuando se haya presentado alegaciones de maltrato bajo una demanda ordinaria de custodia, el Tribunal de Primera Instancia celebrará, dentro de un plazo no mayor de quince (15) días contados a partir de la fecha de radicación de la contestación de la demanda, una vista para determinar si procede ordenar alguna medida provisional, luego de evaluar la prueba del alegado maltrato. Art. 26 de la Ley Núm. 57-2023, *supra*. En ninguna circunstancia se entenderá de manera restrictiva que las alegaciones sobre maltrato o negligencia contra un menor se limitan exclusivamente a las presentadas mediante las alegaciones iniciales, por lo cual se podrán presentarse alegaciones ante cualquier situación de maltrato o negligencia en cualquier etapa del proceso judicial de custodia. Íd. Ante este tipo de circunstancia, el Tribunal de Primera Instancia podrá requerir la participación del Departamento de la Familia y del Procurador de Asuntos de Familia a la vista, además de la presentación de un informe del Trabajador Social. Íd.

En cuanto a tal informe, nuestra jurisprudencia ha dictaminado que, para propósitos de impugnación, el requisito mínimo del debido proceso de ley exige que las partes tengan la oportunidad de examinar la prueba pericial adversa y contrainterrogar a los peritos que la produjeron. *Rentas Nieves v. Betancourt Figueroa*, 201 DPR 416 (2018). El que las partes tengan la oportunidad de examinar y tomar notas de algún informe social no es suficiente para cumplir con el debido proceso de ley, por lo cual dichas partes deberán obtener una copia fiel y exacta de tal informe. Íd.

Por otro lado, nuestro ordenamiento define la patria potestad como aquel conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos menores de edad y no emancipados, lo cual incluye la educación, alimentación, salud física y mental, y protección de tales menores. Arts. 589-590 del Código Civil de 2020, 31 LPRA sec. 7241, 7241; *Vargas v. Soler*, 160 DPR 790 (2003). Igualmente, es derecho fundamental de los padres poder relacionarse con sus hijos, aunque no es uno absoluto y puede ser limitado en función del interés apremiante del Estado de proteger el bienestar de los menores. *Estrella, Monge v. Figueroa Guerra*, 170 DPR 644 (2007); *Rexach v. Ramírez*, 162 DPR 130 (2004). Al así hacerlo, la adjudicación de la patria potestad y la custodia se determinará a base del mejor bienestar del menor. *Rivera v. Morales*, 167 DPR 280 (2006). Dicho criterio está revestido del más alto interés público y los tribunales, en protección de ese interés y en el ejercicio del poder de *parens patriae*, tienen amplias facultades y discreción. *Martínez v. Ramírez Tió*, 133 DPR 219 (1993).

En virtud de lo discutido, cualquier suspensión del ejercicio o privación de la patria potestad deberá determinarse solamente mediante decreto judicial, y ésta última únicamente podrá emitirse si el Estado demuestra tener un interés apremiante para la privación mediante prueba clara, robusta y convincente, además de que no existe un medio menos oneroso que dicha privación. Art. 608 del Código Civil de 2020, 31 LPRA sec. 7301. En lo pertinente, un progenitor podrá ser privado de la patria potestad por (1) causar daño, o poner en riesgo sustancial de sufrir daño o perjuicio predecible, a la salud física, mental o emocional del menor; o (2) incurrir en conducta que, de procesarse por

la vía criminal, constituiría los delitos de maltrato y negligencia a menores, agresión sexual, incesto, actos lascivos, o exposiciones obscenas. Art. 615 del Código Civil de 2020, 31 LPRA sec. 7322. Véase, también, Arts. 130-131, 133, 136 del Código Penal, 33 LPRA sec. 5191-5192, 5194, 5197.

Atendido lo anterior, en cuanto al recurso TA2025CE00198, vale recordar que el auto de *certiorari* es el vehículo procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos, tanto en el ámbito provisto por la Regla 52.1 de Procedimiento Civil de 2009 (32 LPRA Ap. V), como de conformidad con los criterios dispuestos por la Regla 40 de este Tribunal de Apelaciones, *supra*. Véase, también, *IG Builders v. BBVAPR*, 185 DPR 307 (2012). En tal sentido, la función de un tribunal apelativo frente a la revisión de controversias a través del *certiorari* requiere valorar la actuación del foro de primera instancia y predicar su intervención en si la misma constituyó un abuso de discreción; en ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia. *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *Citibank v. ACBI*, 200 DPR 724 (2018).

Por otro lado, la doctrina de cosa juzgada procura poner fin a los litigios luego de los tribunales adjudicarlos de forma definitiva y, de este modo, garantizar la certidumbre y seguridad de los derechos declarados mediante las resoluciones judiciales y así evitar gastos adicionales al Estado y a los litigantes. *Presidential v. Transcaribe*, 186 DPR 263 (2012) (citando a *Worldwide Food Dis., Inc. v. Colón et al.*, 133 DPR 827 (1993)). Asimismo, una sentencia que adviene final y

firme constituye cosa juzgada no solo en cuanto a todo lo que se alegó y se admitió en torno a la reclamación presentada, sino también en cuanto a todo asunto que pudo haberse planteado, siempre y cuando haya tenido la parte la oportunidad de ser oída. *Comisión v. González Freyre et al.*, 211 DPR 579 (2023) (citando a *Marrero Rosado et al. v. Marrero Rosado*, 178 DPR 476 (2010)).

Asimismo, el ordenamiento federal ha dictaminado que, dentro del tema de violencia doméstica, la doctrina de cosa juzgada no aplicará cuando la peticionaria todavía teme la continuación del abuso, haya habido o no un nuevo incidente de violencia perpetrado por el peticionado. J.K. Stoever, *Freedom from Violence: Using the Stages of Change Model to Realize the Promise of Civil Protection Orders*, 72 Ohio St. L.J. 303 (2011). Esto es, cuando la peticionaria todavía está en un estado de temor, la controversia sobre la violencia doméstica no ha sido litigada hasta su finalidad. Íd. Véase *Muma v. Muma*, 60 P3d 592 (Wash. Ct. App. 2002). No obstante, otros foros estadounidenses han determinado que la inexistencia de un hecho adicional en cuanto a un acto de agresión o violencia permite la imposición de la doctrina de cosa juzgada, al igual que la denegación de una petición de orden de protección previa prohíbe la autorización de otra petición por los mismos hechos. Véase *Hripunovs v. Maximova*, 263 Md. App. 244, 322 A.3d 813 (2024); *PF v. JF*, 336 Mich. App. 118, 969 NW2d 805 (2021); *MG v. VP*, 74 NE3d 259 (Ind. Ct. App. 2017).

Ahora bien, cuando esté pendiente un caso de custodia o privación de patria potestad, el Tribunal de Primera Instancia tendrá jurisdicción para atender una solicitud de orden de protección dentro de dicho caso, sin necesidad de referir el asunto a una sala Municipal o

Superior. Art. 68 de la Ley Núm. 57-2023 (8 LPRA sec. 1759). Una vez presentada la petición de orden de protección, el tribunal expedirá una citación a las partes, bajo apercibimiento de desacato, dentro de un término que no excederá de cuarenta y ocho (48) horas. Íd.

Sabido esto, un Tribunal podrá expedir una orden de protección cuando determine que existen motivos suficientes para creer que un menor ha sido víctima de maltrato o negligencia, o que existe riesgo de serlo. Art. 69 de la Ley Núm. 57-2023 (8 LPRA sec. 1760).[2] Dicha orden de protección podrá incluir, entre otros, (1) adjudicar la custodia provisional del menor maltratado, o en riesgo de serlo, a la parte peticionaria, o al familiar más cercano que garantice su mejor interés y seguridad; (2) ordenar a la parte peticionada abstenerse de molestar, hostigar, perseguir, intimidar, amenazar o de cualquier otra forma interferir con el ejercicio de la custodia provisional sobre el menor; (3) ordenar a la parte peticionada abstenerse de acercarse o penetrar en cualquier lugar donde se encuentre el menor, cuando a discreción del tribunal dicha limitación resulte necesaria para prevenir que tal parte maltrate, moleste, intimide, amenace, o de cualquier otra forma interfiera con los menores; y (4) emitir cualquier orden necesaria para dar cumplimiento a los propósitos y política pública de esta ley. Íd.

Por último, es altamente conocido que los casos criminales y civiles requieren distintos estándares de prueba, esto es, los hechos en los procesos penales deberán evidenciarse más allá de la duda razonable, mientras que los hechos en procedimientos civiles solamente

---

[2] De manera similar, la derogada Ley Núm. 246-2011 disponía que el Tribunal de Primera Instancia podría expedir una orden de protección cuando determine que existen motivos suficientes para creer que un menor ha sido víctima de maltrato o negligencia, o que existe riesgo de serlo. Véase Art. 66 de la Ley Núm. 246-2011 (8 LPRA ant. sec. 1183).

necesitan que se revelen mediante la preponderancia de la prueba. Véase *Román v. Fattah*, 109 DPR 493 (1980). A esos efectos, el que una persona fuera absuelta en un proceso criminal no implica que la prueba que fue insuficiente para el caso criminal sea igualmente insuficiente para el proceso civil, toda vez que este último requiere un estándar menos riguroso para probar los hechos alegados. Íd.

Ante ello, el Tribunal Supremo ha definido las alegaciones preacordadas como aquellas negociaciones entre el Ministerio Público y el abogado del imputado por medio de la cual el acusado se declara culpable a cambio de ciertos beneficios que el Estado le concederá. *Pueblo v. Santiago Agricourt*, 147 DPR 179 (1998). Dicho acto de declararse culpable es un acto grave, solemne y de gran trascendencia en el procedimiento criminal, ya que el acusado renuncia a gran parte de los derechos fundamentales que le garantizan la Constitución y las leyes y, por consecuencia, el Tribunal solamente lo aceptará con sumo cuidado y discernimiento. *Pueblo v. Suárez*, 163 DPR 460 (2004); *Pueblo v. Figueroa García*, 129 DPR 798 (1992). En tal sentido, la jurisprudencia ha establecido que una vez un tribunal acepta una alegación preacordada de culpabilidad, la misma queda consumada y ninguna de las partes o el Tribunal podrá retirarla. *Pueblo v. Pérez Adorno*, 178 DPR 946 (2010).

En el presente caso, en cuanto al recurso TA2025AP00280, resolvemos que el Tribunal de Primera Instancia erró al privar la patria potestad del señor Whelan sin este haber tenido oportunidad de impugnar el *Informe Social Forense*. Del expediente se desprende que el señor Whelan avisó oportunamente su intención de impugnar dicho *Informe* y de haber contratado los servicios de un perito para estos

propósitos. El debido proceso de ley, según articulado en nuestra jurisprudencia, dictamina que el señor Whelan debe de tener la oportunidad de impugnar el *Informe Social Forense* con su propio perito, particularmente cuando dicho *Informe* trae al relieve dudas sobre la credibilidad de la Dra. Jamitza Burés Torres, trabajadora social que evaluó positivamente al señor Whelan durante sus comunicaciones con los menores de edad. Más aun, el *Informe* trae a relieve alegaciones de conducta sexual contra menores previo al caso de epígrafe y que fueron investigados y evaluados anteriormente por entidades gubernamentales y médicas. Por tanto, el Tribunal apelado deberá celebrar una vista de impugnación a propósito de darle la oportunidad a las partes de impugnar o defender el *Informe Social Forense*, a fin de determinar la necesidad fundada de privar o no la patria potestad del señor Whelan.

En cuanto al caso TA2025CE00198, el Tribunal de Primera Instancia igualmente erró al emitir una *Orden de Protección Enmendada* con vigencia hasta que los menores de edad alcanzaran la mayoría de edad. Como consecuencia de lo discutido en el párrafo anterior, el Tribunal recurrido abusó de su discreción al disponer la extensión de una orden de protección que, remitida a hechos anteriores, sirve de privación fáctica de la patria potestad en defecto de la adecuada adjudicación, en cuanto extendida hasta la mayoridad de los menores. Lo correcto era que el Tribunal evaluara si persistían las circunstancias que habilitaron la orden original y, al considerarlo así, que reprodujera la extensión anual que había efectuado anteriormente para tomar en cuenta el resultado del proceso pendiente de patria potestad.

En consecuencia, modificamos la *Orden de Protección Enmendada* para rebajar su vigencia a un (1) año, tal cual había sido la

práctica del Tribunal, a fin de que la eventual extensión o enmienda a dicha orden considere tanto del resultado de la controversia sobre patria potestad, como la existencia de peligro contra los menores de edad al momento de adjudicarse.

Además, contrario a lo que el señor Whelan argumenta en el recurso TA2025CE00198, el Tribunal recurrido ciertamente puede emitir una orden de protección basado en los mismos hechos que en el caso criminal fueron utilizados, ya que los estándares de prueba de un caso civil son más livianos que aquellos en un caso criminal. Asimismo, el que las varias órdenes de protección sobre los mismos hechos hayan sido emitidas bajo designaciones alfanuméricas distintas, no cambia nuestra decisión en cuanto a la no aplicabilidad de la doctrina de cosa juzgada. *Muma* v. *Muma*, *supra*.

Por los fundamentos expresados, revocamos la *Sentencia* recurrida y devolvemos el caso al Tribunal de Primera Instancia para la celebración de la vista de impugnación requerida previo a la adjudicación de la controversia sobre patria potestad. Igualmente, expedimos el auto de *certiorari* y modificamos la *Orden de Protección Enmendada* para limitar la extensión de su vigencia hasta un (1) año.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones